CHARLES B. PHILLIPS

*v.*

THE SOUTH PARK COMMISSIONERS *et al.*

*Filed at Ottawa January 25, 1887.*

1. ALLEGATIONS AND PROOFS—*as to contract of sale of land.* An averment in a bill, in the nature of a bill of interpleader, showing a contract for the purchase of a tract of land at a stated price per acre, the title to be made good by freeing it of all clouds, will be supported by the production of such a contract, and proof of another agreement, made on the same date, by the vendor with his attorneys, for *their professional services in aiding in perfecting* the title and defending against adverse claims, by which such attorneys are to receive a certain share of the purchase money when collected, will not establish a contract of sale at variance from that alleged in the bill, and such agreement with the attorneys having so remote a bearing on the merits, might well be admitted in evidence though not stated in the bill.

2. CHAMPERTY—*whether a contract is champertous.* A contract between a claimant of land in the adverse possession of another, and attorneys at law, for their services in litigating such adverse claim, by which the attorneys are obligated to carry on such litigation and required to render their professional services therein, and are to receive one-fourth of what may be realized by their services, is not champertous, it lacking the essential element that the attorneys shall prosecute the litigation at their own cost and expense.

3. In such case, the fact that a purchaser of the party prosecuting the litigation may have furnished him money in advance on his contract, which

was used by him in prosecuting his suits to recover the property, will have no bearing on the question of champerty.

4. CHANCERY—*as to the character and purpose of a bill—whether for specific performance.* Certain park commissioners filed their bill against various parties showing a purchase by the complainants of certain land from B, for a public park, he to make the title perfect, and a deed from him, and the existence of a dispute as to B's title, his wife claiming to be the equitable owner thereof and claiming compensation therefor, and praying that B and his wife be required to interplead and adjust their respective claims to the purchase money and for the confirmation of the title in the complainants, and offering to pay the price to the party entitled thereto: *Held*, that such bill could not be regarded as a bill for the specific performance of the original contract of purchase.

5. SETTLEMENT *by husband upon wife—whether established by the proofs.* For the purpose of showing a voluntary settlement of land, by a husband, on his wife, by a supposed deed of trust to her father in 1852, the wife produced an indorsement, in the handwriting of her husband, on a will made by him in 1851, that he had made a deed of trust to the father, and also a letter written by her husband in 1852, which stated, "I have concluded to give Lizzie (the wife) a deed of my farm; * * * I shall give her a deed this day," and also other letters, in which he referred to the farm as belonging to her. She also testified to having resided on the farm and cultivating it for some twelve years, until the house was destroyed by fire, but no deed of trust was produced, and no witness was found who had ever seen it: *Held*, that the proof was not sufficient to establish the alleged settlement, especially where the letters and acts of the wife were inconsistent with the existence of such claim.

6. RECORDING LAW—*priority of recorded deed over one unrecorded.* A party taking and recording a deed to him for land, without notice of a prior unrecorded one from the same grantor, will be protected against such unrecorded deed, and the deed first recorded will take priority.

7. RESCISSION OF CONTRACT—*placing party in statu quo.* A party re-receiving money by virtue of a contract made by him, if he has any right to declare a forfeiture, will, in equity, not be allowed to exercise it and rescind the contract, unless he restores the other parties to their original position. He must first return the money so received by him.

8. PURCHASER *with notice—and what will constitute notice.* The rights of a wife in land derived through a deed from her husband will not be affected by a contract for its sale made by her husband, and his subsequent conveyance, when the purchaser, at the time of his purchase, had notice that she claimed such land. Notice of her claim is held sufficient to put such purchaser upon inquiry as to her title.

9. EMINENT DOMAIN—*payment of compensation, as a condition precedent to right of possession.* Our Eminent Domain act requires the payment

of the compensation for land taken for public use, or a tender, or a deposit of the same with the county treasurer, before possession shall be taken. This is a condition precedent to the taking of possession.

10. SAME—*interest upon compensation awarded.* Where possession has been acquired of land for a public park, or other public use, and payment of the compensation awarded is withheld, it is proper to require the payment of interest thereon from the time possession is taken.

11. TRUSTS—*Statute of Frauds—establishing a trust by parol—what is a sufficient writing.* Under the Statute of Frauds, a conveyance, absolute on its face, can not be shown to have been made in trust for another, by parol evidence. That can only be proved by some writing signed by a person authorized to declare the trust. The trust may be manifested by a writing separate from the deed, showing an intention that the conveyance shall be in trust.

12. If the grantee of a husband, while holding the title to the land conveyed, makes a declaration that he holds it in trust for the grantor's wife, by letter, affidavit, answer to a bill in chancery, or even by deposition, it may be binding on him, and be sufficient to show, in writing, a trust in her favor.

13. SAME—*evidence to establish a trust—declarations of grantor after conveyance.* After the holder of the legal title to land has divested himself of all interest and title in the same by an absolute deed, any subsequent declarations by him, whether in deposition, or writing, or otherwise, can not affect the title, and charge the premises with a trust.

14. SAME—*purchaser from trustee, with notice.* Where land is conveyed to one to secure the repayment of advances of money, after the payment of the debt secured the grantee will hold the title as a mere trustee, for the benefit of the grantor; and a voluntary conveyance by such trustee, in violation of his trust, to his son, and a conveyance by the latter to the original grantor's wife, having notice of the facts, will pass no title which she may assert in a court of equity.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. E. H. SELLERS, for the appellant Charles B. Phillips:

The contract proved is champertous and void, as against public policy. 4 Blackstone's Com. 134; 2 Chitty on Contracts, 996, 997; Story's Eq. Jur. sec. 1048. See, also, *Thurston* v. *Percival,* 1 Pick. 415; *Lathrop* v. *Amherst Bank,* 9 Metc. 489; *Redman* v. *Sanders,* 2 Dana, 70; *Allen* v. *Hawks,* 13 Pick. 79; *Rust* v. *Larue,* 4 Litt. 417; *Caldwell* v. *Shep-*

*hard,* 6 Mon. 392 ; *Smith* v. *Thompson,* 7 B. Mon. 305 ; *Stanley* v. *Jones,* 7 Bing. 369 ; *Norton* v. *Little,* 60 Ill. 130 ; *Gilbert* v. *Holmes,* 64 id. 548 ; *Thompson* v. *Reynolds,* 73 id. 11 ; *Coleman* v. *Billings,* 89 id. 183.

Sweeney, after parting with all title that ever was in him, could not declare a trust in favor of any one. *Tierney* v. *Wood,* 19 Beav. 330.

Mr. M. W. FULLER, for the South Park Commissioners :

At common law, interest was not allowed in any case, and States, counties, cities and towns not being mentioned in the statute regulating interest, are not within its provisions, so as to be required to pay interest,—and the park commissioners fall within the same category. *Park Commissioners* v. *Dunlevy,* 91 Ill. 54 ; *Pekin* v. *Reynolds,* 31 id. 530 ; *People* v. *Tazewell County,* 22 id. 147 ; *Beveridge* v. *Commissioners,* 100 id. 81.

To make champerty, it must be shown that the costs and expenses of the suit are to be paid by the champertee. *Park Commissioners* v. *Coleman,* 108 Ill. 601 ; *Torrence* v. *Shedd,* 112 id. 466.

It is not the inclination of the courts to carry the doctrine of champerty any farther than it has gone. *Webb* v. *Thompson,* 23 Md. 428 ; *Patterson* v. *Nickerson,* 79 Ind. 250 ; *Stolsenburgh* v. *Marks,* 79 Ill. 196.

Mr. ROBERT RAE, and Mr. JOHN S. MILLER, for the appellee Mrs. Phillips :

The tendency in the United States is to sustain and carry into effect a trust in favor of a wife or child. Perry on Trusts, sec. 109 ; *Otis* v. *Beckwith,* 49 Ill. 121 ; *Bryan* v. *Wash,* 2 Gilm. 557 ; *Cline* v. *Jones,* 110 Ill. 563 ; *Smith* v. *Yocum,* id. 142.

The deposition of Sweeney was competent to prove the trust on which the property was conveyed to him. This trust

was created and took effect in January, 1859, and has existed ever since. It may be manifested and proved at any time when the occasion to prove it arises, and when proved it relates back to the time of its creation. Hill on Trustees, *56; Spence's Eq. Jur. *21; Browne on Statute of Frauds, 95, sec. 97; Perry on Trusts, sec. 82; Lewin on Trusts, 49; 2 Washburn on Real Prop. 503; *Pinney* v. *Fellows*, 15 Vt. 525; *Reid* v. *Reid*, 12 Rich. Eq. 213; *Smith* v. *Howell*, 3 Stockt. 349; *Davis* v. *Otley*, 33 Beav. 540.

The statute has merely changed the rule of evidence by requiring the proof to be in writing, which, but for the statute, might be by parol. 2 Washburn on Real Prop. 503; *Hall* v. *Livingston*, 3 Del. Ch. 348; *Murphy* v. *Hubert*, 7 Pa. St. 420; *Bank of United States* v. *Carrington*, 7 Leigh, 576; *Fleming* v. *Donahue*, 5 Ohio, 255; *Foy* v. *Foy*, 5 Hayw. 296.

No form of words is necessary. (2 Washburn on Real Prop. 507; Browne on Statute of Frauds, sec. 99.) It is not necessary that the declaration of trust be made to the *cestui que trust*. (2 Washburn on Real Prop. 502; Browne on Statute of Frauds, sec. 99.) It may be by letter to a third party. (*Kingsbury* v. *Burnside*, 58 Ill. 310; *Moore* v. *Pickett*, 62 id. 158; *Forster* v. *Hale*, 3 Ves. Jr. 696; 5 id. 308.) Or by a memorandum. (*Raybold* v. *Raybold*, 20 Pa. St. 328.) Or by a written promise to declare a trust. (*Bellamy* v. *Burrows*, Talb. 98.) Or by an answer in chancery. (*Hampton* v. *Spencer*, 2 Vern. 288; *Macubbin* v. *Cromwell*, 7 Gill & J. 157; *McLaurie* v. *Partlow*, 53 Ill. 240.) Or by a printed pamphlet. (*Barrell* v. *Joy*, 16 Mass. 221.) Or by an affidavit. *Barkworth* v. *Young*, 4 Drew, 1.

Or it may be by a deposition of the trustee, taken and read in the very cause in which the trust is sought to be proved and established, as in the case at bar. *Pinney* v. *Fellows*, 15 Vt. 525; *Reid* v. *Reid*, 12 Rich. Eq. (40 S. C. L. and Eq.) 213; *Olcott* v. *Bynum*, 17 Wall. 44.

Such deposition answers the statute, and is competent evidence, not only against Sweeney, but his grantees; and the lands in the hands of any such grantees who are not *bona fide* purchasers for value, without notice, will be charged with the trust. *Reid* v. *Reid*, 12 Rich. Eq. (40 S. C. L. and Eq.) 213; *Pinney* v. *Fellows*, 15 Vt. 525; *Olcott* v. *Bynum*, 17 Wall. 44; *Rutledge* v. *Smith*, 1 McCord's Ch. 119; *White* v. *Fitzgerald*, 19 Wis. 489; *Price* v. *Brown*, 4 S. C. 144; *Sime* v. *Howard*, 4 Nev. 473; *Sieman* v. *Austen*, 33 Barb. 9; *Ambrose* v. *Ambrose*, 1 P. Wms. 321; *Gardner* v. *Rowe*, 2 Sim. & Stu. 346; 5 Russ. Ch. 258; Hill on Trustees, *57.

The grantee of a trustee, either with notice or without, having paid value, will take the premises charged with the trust. Hill on Trustees, *144, 164, 172; Perry on Trusts, secs. 217, 828.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill in equity, in the nature of a bill of interpleader, brought by the South Park Commissioners, against Charles B. Phillips, Elizabeth Ann Phillips, and others. The bill set up that the South Park Commissioners had acquired title to the east half of the south-west quarter of section 13, township 38 north, range 14 east, in Cook county; that under a contract with Charles B. Phillips, dated December 10, 1869, the corporation had agreed to pay Phillips, for the land, $800 per acre, when a good title should be made for each acre; that about February, 1859, the said premises were conveyed by said Charles B. Phillips, and Elizabeth Ann Phillips, his wife, to Daniel S. Sweeney, and by Daniel S. Sweeney to Thomas Wright, and in June, 1863, by Thomas Wright to David U. Martin; that on or about the 30th day of March, A. D. 1870, one David U. Martin, then residing in the city and State of New York, and then and there holding the title to said premises, did, by his certain deed of that date, make conveyance to complainant, for valuable consideration to him

by complainant then and there paid, of the south fractional half of section 13, in township 38 north, range 14 east, which deed was duly recorded in Cook county April 5, 1870; that on the 1st day of July, 1870, one John Phillips, then and there claiming to have some interest in said premises, conveyed the same to complainant, by deed duly recorded July 28, 1870; that on the 20th day of July, 1870, Charles B. Phillips, by deed conveyed the same premises to complainant, which deed was, on the 28th day of July, 1870, duly recorded; that the conveyance aforesaid, to complainant, conveyed, all and singular, the beneficial rights and interests of the said Phillips, and of his family, of, in and to said premises, and for the consideration aforesaid, to-wit, $800 an acre, but such consideration was only to be paid for a good and indefeasible title to said premises, free and clear of incumbrances; that at the time of said conveyances, there were divers clouds thereon, which had been thereon placed by one William P. Kerr, and which were shown of record in the county of Cook aforesaid, and that it was essential that said premises should be freed from said clouds before said sum of $800 an acre should be paid; that two certain bills of complaint were filed, involving the title to said south fractional half of said section 13, township 38, etc., by said William P. Kerr, in the United States Circuit Court within and for the Northern District of Illinois,—one against Wilson and others, November 27, 1869, and one against Phillips and others, October 3, 1870,—to the first named of which, complainant was made a party defendant, September 26, 1870; that these two bills were finally consolidated, and complainant answered the said bill, and such proceedings were thereafterwards taken in such suit as resulted, upon the 8th day of October, 1878, in a decree dismissing said bill as to the east half of the south-west quarter of said section 13, and thereby all right, title and interest of said William P. Kerr, or his assigns, in said 80 acres last mentioned, were determined adversely to him and them, but

as to the remainder of said premises the said decree was adverse to complainant's title derived as aforesaid, as will appear by reference to said decree; that from said decree of said 8th day of October, 1878, an appeal was prayed by complainant to the United States Supreme Court, and duly prosecuted therein, which resulted in the affirmance of said decree by said Supreme Court; that the litigation as to the said 80 acres having been determined as aforesaid, complainant is now ready and willing to settle and pay therefor, at the said rate of $800 per acre, as it has always been ready to do, upon title being perfected in the same or any acre thereof; but complainant says, that by reason of the action of said Charles B. Phillips in making conveyances of said 80 acres, and of a controversy which has broken out between said Phillips, and Elizabeth Ann Phillips, his wife, complainant has found it impossible to pay over the purchase price of said land with safety. The bill prays that defendants may set forth their claims, and may interplead and settle and adjust their demands between themselves, and that complainant may be at liberty to bring and pay the said purchase price into court for the benefit of such of the defendants as shall appear entitled thereto, and that complainant's title to the 80 acres may be confirmed and established in complainant, and that complainant may have general relief.

The defendant Charles B. Phillips denied the contract set up in the bill, and filed a cross-bill, claiming the value of the entire 80 acres. Elizabeth A. Phillips put in an answer, and also filed a cross-bill. She denied that she was bound by the contract set up in the bill; and claimed, first, the entire 80 acre tract, under a trust created in her favor by Phillips, in 1852; and second, in the event of a failure to establish title to the entire tract, she claimed that part of the 80 acres which lies south of the north 103 acres of fractional half of section 13, originally owned by Phillips, under an alleged family settlement, made through one Atkins, in August, 1868.

The decree of the circuit court found that Mrs. Phillips was the owner, in equity, of the south $34\frac{17}{100}$ acres of the premises, and was entitled to be paid by the South Park Commissioners the value thereof, upon the 27th day of August, 1870, when the park commissioners took possession thereof, with interest thereon from that time, and that Phillips was entitled to be paid for the balance,—$45\frac{83}{100}$ acres,—the sum of $800 per acre,—the amount fixed by a contract between Phillips· and the park commissioners, under which the park commissioners claim,—with interest thereon from the 27th day of August, 1870; and the decree also established the rights of the assignees of Phillips, Rawson, McConnell, Ingersoll, Seeley and Gates, in the portion of the fund decreed to Phillips. From the decree so rendered, Phillips has appealed, and assigned errors which question the finding in favor of Mrs. Phillips, and of the South Park Commissioners, and of the intervening claimants, etc. Mrs. Phillips assigned cross-errors in not being decreed the value of the whole eighty, in the awards to claimants under Phillips, etc. The South Park Commissioners assigned cross-errors to the awarding of the $34\frac{17}{100}$ acres to Mrs. Phillips, the allowing of interest from August 27, 1870, etc.

The first question relied upon to reverse the decree, is a variance between the contract set out in the bill and the contract put in evidence. The complainants produced, on the trial, a contract executed December 10, 1869, by the South Park Commissioners and Phillips, which, in substance, provided, that Phillips would perfect in the commissioners a good title to the south fractional half of section 13, township 38 north, range 14, east of the third principal meridian, free and clear of all liens, for which they agree to pay $800 per acre. It turned out, however, on the trial, that on the same date another agreement was executed by Phillips, of the one part, and Beckwith, Ayer & Kales, attorneys at law, of the other part, which refers to the other agreement, and

provides that Beckwith, Ayer & Kales shall use their best endeavors and skill, by process of law, and otherwise, to perfect the title to the land sold, in the South Park Commissioners, according to the meaning of the contract, and to render their services to defend against all adverse claims, and Phillips agrees to pay for such services one-quarter of what he may be entitled to receive from the South Park Commissioners, which said quarter is assigned and transferred by Phillips to the attorneys. Conceding that the two agreements are to be treated as one transaction, as contended by counsel for appellant, there was no such variance between the proof and allegation of the bill as would lead to a reversal of the decree. The object of the averments in complainants' bill was to show that they had acquired the Phillips title for a stipulated price, under a contract in writing, executed by them and the said Phillips, and it is not perceived in what way the contract executed by and between Phillips and Beckwith, Ayer & Kales had any bearing on this question. This latter contract was a mere agreement for professional services, in which the service to be performed was stated and the price to be paid determined by the parties, and if it is to be regarded as a part of the contract set up in the bill, it had such a remote bearing on the real point involved between Phillips and the South Park Commissioners, that we think it might be put in evidence, although the bill contained no allegation in reference to it. We fully recognize the rule that the allegations and proofs must agree, but there was, here, no such variance as to be regarded a violation of the rule.

It is next urged that the contract is champertous and void, as against public policy. It is true that the land in question was in the possession of Kerr at the time the contract involved was entered into, and the contract provided that the litigation should be carried on, and Beckwith, Ayer & Kales were to render the professional services, and were to receive one-fourth of what should be realized, for such services. If

an agreement of this character, entered into between attorney and client, is champertous, then the point is well taken; but as we understand the law, the contract lacked one essential element to render it champertous, and that is, that the attorneys should prosecute the litigation at their own costs and expense. Had the contract provided that the attorneys should carry on the litigation for a share of what they might recover, at their own cost and expense, then the contract might have been champertous and void. (*Thompson* v. *Reynolds,* 73 Ill. 11; *Park Commissioners* v. *Coleman,* 108 id. 601.) Such, however, is not the case. The written contract, which alone fixes and determines the rights and duties of the parties, contains no provision whatever requiring the attorneys or the park commissioners to pay the costs or expenses of the litigation. The fact that the park commissioners may have advanced Phillips money which was used in the prosecution of the litigation, has no bearing on the question.

It is next claimed that this is a bill to enforce the specific performance of a contract, and the circumstances connected with its execution are such that a court of equity will not lend its aid to enforce the agreement. As we understand the record, the bill is not brought to enforce the specific performance of a contract. The park commissioners do not ask, in their bill, that Phillips, or any of the defendants, be required to convey the premises. On the other hand, they allege that they have acquired the title, and are ready to pay, but desire a judicial determination in regard to the person or persons who may be entitled to receive the money. This is the scope and object of the bill, and it is apparent that it can not be regarded as a bill for the specific performance of a contract. But if it was, we see nothing in the evidence to impeach or invalidate the contract, unless all the evidence in the record should be disregarded except the testimony of Phillips, and the case should be decided solely on his testimony. During the summer and fall of 1869, Phillips made a number of

propositions to sell the property to the South Park Commissioners, which culminated in the written contract of December 10, 1869, under which he was to receive $800 per acre. The original contract was not produced on the trial, as it had been destroyed in the great fire, but a photographic copy of Phillips' duplicate of the contract was produced, and it was backed in the handwriting of Phillips, as follows: "State of Illinois, Cook county.—South Park Commissioners' bond to Charles B. Phillips, for 196 acres of land, more or less, at $800." Here is a solemn declaration in writing, made by Phillips, in confirmation of the contract he had executed, which does not indicate that he was to be paid for the land what it might be worth, as he now contends. But this is not all. After the execution of the contract, Phillips wrote the commissioners letters, in which the contract is recognized. Indeed, after a careful consideration of the evidence, we are of opinion that there is no room for saying that the contract was not fairly entered into, or that the consideration was inadequate, and we see no reason why it should not be enforced, so far as Phillips is concerned.

Much has been said, in the argument, in reference to the action of Beckwith, Ayer & Kales in the matter; but we see nothing wrong in what they did or omitted to do. They were attorneys for the South Park Commissioners, but as there was no conflict between Phillips and the commissioners, so far as the title of Phillips was concerned, both being interested in sustaining his title and defeating all adverse claims, there was no impropriety in Beckwith, Ayer & Kales acting for both Phillips and the commissioners, in defence of the Kerr case, or any other litigation involving the validity of the Phillips title to the premises in dispute.

But it is said that Phillips contracted for the services of the three members of the firm, and that Beckwith and Ayer did nothing in the case. It does not appear, however, that Phillips was in any manner injured from this cause, or that

his suit was not properly attended to. Mr. Kales had the management of the case, and, so far as appears, did all that was necessary to be done, or all that could have been done had the other members of the firm given the matter their personal attention, and we perceive no good ground of complaint on this score.

We now come to the claim of Elizabeth A. Phillips to the property. In her cross-bill, she asserts title to the entire 80-acre tract, and, in the argument, it is claimed that if the evidence is insufficient to sustain this claim, then she is entitled to hold the south $34\frac{17}{100}$ acres awarded her by the decree of the circuit court, under an agreement that was made in August, 1868. For the purpose of establishing the claim first made to the property, reliance is placed upon a supposed deed of trust from Charles B. Phillips to Dr. Thomas Wright, in 1852, and, as evidence of such a deed, an indorsement in the handwriting of Phillips, on a certain will which he executed in 1851, is produced, to the effect that he had made a deed of trust to Wright, for the benefit of his wife. Also, a letter written in 1852, by Phillips, in which he says: "I have concluded to give Lizzie a deed of my farm,—200 acres on the lake shore. * * * I shall give her a deed this day," etc. Other letters of Phillips were read in evidence, in which he refers to the farm as belonging to his wife. In connection with this, Mrs. Phillips testifies to residing on the farm, cultivating and improving it for some ten or twelve years, until the house was destroyed by fire. We do not regard the evidence sufficient to establish a settlement of the property on Mrs. Phillips. No deed of trust was produced, nor was it shown that such an instrument was ever seen, by any witness, and the acts and declarations of Mrs. Phillips are totally inconsistent with the theory now set up,—that the property was settled on her. Her possession of the property with her family was such as a man's wife would ordinarily be, of the husband's estate. In a letter to Mr. Kerr, in 1867, she

speaks of the property as her husband's, and says: "I have, on several occasions, tried to persuade Mr. Phillips to allow you a sufficient portion of this place, at the market price, to satisfy your claim, and he has often refused." In 1863, in a letter to her husband, among other things she says: "I received a letter from George Wait, informing me that everything was being stolen off your farm near Chicago." In the same letter she alludes to the fact that the property had been held by her father, Dr. Wright, as security for money advanced, but deeded back as soon as the advances were paid. The witness Cornell testifies, that in 1868, when he was trying to aid Mrs. Phillips to secure her rights, the only claim made was that of dower and homestead. Dr. Wright testified that he held the property to secure money advanced to Phillips, and when they settled, in June, 1863, he conveyed to Martin, at Phillips' request. Martin testified that he received the title in trust for Phillips, and conveyed to the park commissioners, at Phillips' request. Indeed, it was never understood by any one who had any dealing with Phillips and his wife in regard to the property, that she was owner. On the other hand, the property was always treated as belonging to Phillips, by the wife and all who had any connection with it. It may be that Phillips expected, at some time, to convey the property to his wife, and his loose declarations may be regarded as evidence of such an intention; but the evidence is not sufficient to show that the intention was carried out. On the 4th day of January, 1859, Phillips conveyed the property in question to one Sweeney. Mrs. Phillips joined in the execution of the deed. On the same day, Sweeney conveyed to Wright. Both deeds were executed at the same time, and as soon as the title passed into Sweeney by one deed, it passed out by the other. It is claimed that the conveyance to Sweeney was in trust for Mrs. Phillips. Neither of the deeds contained evidence of the trust, nor was any writing produced to establish such fact, as required by the Statute of Frauds.

The 9th section of the Statute of Frauds, (Rev. Stat. chap. 59, p. 574,) provides: "All declarations or creations of trusts or confidences of any lands, tenements or hereditaments shall be manifested and proved by some writing, signed by the party who is, by law, enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of no effect: *Provided*, that resulting trust or trusts created by construction, implication, or operation of law, need not be in writing, and the same may be proved by parol." This is not claimed to be a resulting trust, or one created by construction, implication, or operation of law. It would, therefore, seem to fall within the terms of the statute, and can only be proved by some writing. It was not essential that the trust should be declared in the deed. It might be manifested by any writing showing a manifest intention that the property was conveyed in trust. If Sweeney, while holding the title to the land, had made a declaration that he held in trust, by letter, affidavit, answer in chancery, or even by deposition, such declaration might have been binding upon him, and a sufficient manifestation in writing to establish the trust; but no such evidence appears.

It is contended that a deposition of Sweeney, taken eighteen years after he had conveyed the property by an absolute deed to Wright, may be regarded as proof in writing to establish the trust. After Sweeney had divested himself of all interest in the property, by the execution of an absolute deed, any subsequent declaration that he might make could not affect the title. (Browne on Frauds, sec. 106; Hill on Trustees, 61, 62; *Turney* v. *Wood*, 19 Beav. 330; Perry on Trusts, sec. 77.) If, while Sweeney held the title to the property in his own name, and the question was, whether he was absolute owner or held in trust, then his subsequent acknowledgment, by letter, by answer in chancery, or by his deposition, might be regarded as sufficient to establish the trust. (Perry on Trusts, sec. 82, and notes.) But such is not the case. Reli-

ance is, however, placed upon a deposition of Sweeney, taken eighteen years after he had conveyed, to the effect that the property was conveyed to him in trust for Mrs. Phillips, and that he supposed, at the time, that the deed he executed conveyed the property to her. If, however, it should be admitted that this evidence was competent to establish a trust, which we do not, the force and effect of the evidence is overcome by the fact that Sweeney actually conveyed to Wright, and it is clear, from the evidence of Phillips, of Wright, and of Mrs. Phillips, that the property was conveyed to Wright, not in trust for her, but for the purpose of securing him for money which he had advanced to Phillips. The evidence in the record clearly preponderates in favor of this view of the conveyance, and entirely overcomes the proof relied upon to establish a trust.

On the trial, Mrs. Phillips put in evidence a deed of the premises from Thomas Wright, to his son, John E. Wright, dated October 9, 1861, and a deed from John E. to herself, dated October 3, 1878, (both recorded October 3, 1878,) and, in the argument, reliance is placed on these conveyances. Thomas Wright, as appears from his own evidence, held the title as security for money which he had advanced to Phillips. On the 2d day of June, 1863, a settlement was made between Phillips and Wright, when the latter was paid in full, and on that date he conveyed the premises to Martin, who recorded his deed June 5, 1863. This deed having been taken and recorded without notice of the prior conveyance made by Wright to his son, will take priority. But aside from this, Mrs. Phillips knew, as shown by her letters and her deposition, that Thomas Wright held the title as security for money due from her husband. She could not, in a court of equity, profit by a conveyance from her father. After the debt had been paid and discharged, Wright held as a mere trustee, and was bound to convey to Phillips, or to such person as he might direct. A conveyance by Wright to his son, with-

41—119 ILL.

out consideration, in violation of his obligation, conferred no superior equities on Mrs. Phillips.

We now come to that part of the decree in which the title to the $34\frac{17}{100}$ acres of the 80-acre tract is confirmed in Mrs. Phillips. This part of the decree is challenged by both Phillips and the South Park Commissioners. It appears from the record, that Kerr, on the 3d day of September, 1866, had obtained a judgment in an action of ejectment, against Charles P. Burton and one Blackwell, under which he had obtained possession of the entire Phillips tract of land, consisting of 194 acres. This judgment was obtained by default, and, under the statute then in force, would become absolute upon the expiration of two years,—September 3, 1868. In August, 1868, Mrs. Phillips saw the situation of affairs, and undertook the recovery of the premises. She engaged Atkins, Cornell, and Leaming & Thompson, to assist her. Phillips, who was then in New York, was induced to come to Chicago, and after some negotiation, an arrangement was consummated, and an agreement in writing executed, bearing date August 21, 1868. This contract was made between Charles P. Burton, (by Charles B. Phillips, his attorney in fact,) and Charles B. Phillips, parties of the first part, and Charles H. Atkins and Leaming & Thompson, parties of the second part, under which the land was to be divided by an east and west line, so as to cut off 103 acres north of the line, and the parties of the second part agreed to use their best endeavors and skill to free the title of said premises, and pay the parties of the first part $1500, and the party of the first part agreed to convey to the second party all the land except the 103 acres, the deed to be held by Atkins, to be delivered to the party of the second part upon completion of their undertaking. For some reason this agreement was not strictly adhered to, but a deed was executed by Phillips and his wife, dated August 19, 1868, to Atkins, for the whole tract, and on August 21, 1868, by Charles P. Burton, (by Phillips, his attorney,) to Charles H.

Atkins.   On the same date, Atkins conveyed, by deed. to Phillips, in trust for Burton, the north 103 acres.   The deed to Atkins was recorded September 5, 1868.   The $1500 paid Phillips came from Mrs. Phillips, the larger portion of which came from certain notes she held on Boyington.   The balance she raised from other sources.   The Boyington notes were executed originally to Phillips, for certain lots he had sold, but in 1863 he gave the notes to his wife.   After the execution of this agreement, Atkins and Leaming & Thompson commenced proceedings against the Kerr title.   They entered a motion in court to vacate the judgment, supported by affidavits of Phillips, Atkins, Mrs. Phillips, and others.   Phillips filed an affidavit, in which he set up that he was the sole agent of Burton, who resided in California; that neither Burton nor himself had any knowledge of the action of ejectment; that he was the sole agent of Burton, who had a full defence to the action.   Efforts were made by the attorneys of Kerr to find Burton, but no such man could be found.   The court thereupon gave Phillips six months to produce Burton, and upon the expiration of six months, Phillips having failed to produce his man, the court overruled the motion.   At this stage of the proceeding Phillips became dissatisfied with Leaming & Thompson, and they, no doubt on account of his inability to produce Burton, became dissatisfied with him. They withdrew from the case.   Subsequently, Atkins and Mrs. Phillips employed Sansom, and, afterwards, Barker and Mr. Ray.   The evidence was procured, and a trial had in the Circuit Court of the United States for the Northern District of Illinois, in the case of *Kerr* v. *South Park Commissioners et al.*, and 80 acres of the land recovered.

It is clear, from the evidence, that the recovery of this land was due to the efforts of Mrs. Phillips, and Atkins, who acted for her, and her attorneys, in connection with the services rendered by the attorney of the South Park Commissioners.   It is true that Leaming & Thompson withdrew from

the case, but at the instance of Mrs. Phillips others took their place, and all has been done that was agreed to be done to free the land from the Kerr title. Under such circumstances, is Mrs. Phillips entitled to protection in a court of equity, or shall the land recovered from Kerr all go to Phillips? That the contract which was entered into with Phillips was made for the benefit of Mrs. Phillips, is beyond question. Leaming & Thompson claim nothing under it. Atkins interposes no claim, but admitted of record, under oath, that he held under the deed from Phillips, in trust for Mrs. Phillips. She, and she alone, it is clear, from the evidence, is entitled to the benefits of the contract of August 21, 1868, and the deeds executed in pursuance of that contract.

It is urged that when Leaming & Thompson withdrew from the case, Phillips forfeited the contract. But this he had no right to do. In no event could he retain the $1500 which he had received under the contract, and at the same time declare a forfeiture. If he had any right of forfeiture whatever, which it is not necessary here to determine, he could only exercise such right by restoring the parties to the position they occupied when the contract was made. It is apparent, too, that Phillips knew that the contract was made for the benefit of Mrs. Phillips. The evidence is ample on this point. It is shown by the evidence of Atkins and Cornell, as well as the letters of Phillips himself. The contract of August, 1868, and the deeds executed in pursuance of that contract, under which Mrs. Phillips derived title, were executed prior to the contract which Phillips made with the South Park Commissioners, under which they claim title, and it was proven by the evidence that the commissioners had actual notice that Mrs. Phillips claimed the land when they entered into contract with Phillips in 1869. As the commissioners therefore had notice of facts sufficient to put them on inquiry at the time they contracted with Phillips, as to Mrs. Phillips' rights in the property, the lands allotted to her are.

not, as was held by the circuit court, affected by the contract made between Phillips and the commissioners.

The court allowed interest on the amount decreed Mrs. Phillips, from the 27th day of August, 1870,—the time when the commissioners took possession of the land,—and this is relied upon as error. Lands can not be taken and appropriated to public use without just compensation is made to the owner; and we think our law of eminent domain requires the payment of the compensation, or a tender, or deposit of the same with the county treasurer, before possession of the land shall be taken. This seems manifest from section 10 of the Eminent Domain act, which, in substance, provides, that when the report of the jury is brought in, the court or judge shall make such order as to right and justice shall pertain, ordering that petitioner enter upon such property, and the use of the same, upon payment of full compensation, as ascertained as aforesaid. The payment of the compensation, or the deposit of the same, seems to be a condition precedent to the taking of possession. When, therefore, the possession of the land is taken, the compensation is due; and if due and payable, it, in justice, ought to draw interest from that time. Here, the South Park Commissioners went into the possession of the land on the 27th day of August, 1870, and they have had the use of the property ever since. They have also had the use of the money which represents the property, although it was due to the owner when they took possession. It is neither equitable nor right that they should have the use of the land and of the money; but as they have had the land, and withheld the payment of money, they should be required to pay interest thereon, as ruled in the circuit court. *Selden* v. *Jones,* 6 Rand. 465; *Delaware Railroad Co.* v. *Bronson,* 61 Pa. St. 369; *Railroad Co.* v. *Gesner,* 20 Pa. 240.

Counsel for Phillips finds fault with the decree protecting the rights of certain intervening petitioners who claim rights

in certain distinct parcels of the premises, through Phillips, for money severally due them from him. Without entering upon a discussion of this part of the decree, we will merely add that we see no objection to it. Indeed, the whole decree, after a laborious examination of a voluminous record and a lengthy argument, we regard as equitable, and one which settles the rights of the various parties as nearly in accordance with justice and right as could be expected where there are so many conflicting interests and diversity of claims.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*