(No. 27796.—

COMMISSIONERS OF LINCOLN PARK, Appellee, *vs.* ADOLPH
SCHMIDT *et al.,* Appellants.

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

WARREN H. ORR, and URION, BISHOP & SLADKEY, (HOWARD F. BISHOP, JEROME J. SLADKEY, and GEORGE P. NOVAK, of counsel,) all of Chicago, for appellants.

JOHN O. REES, and WINSTON, STRAWN & SHAW, (RALPH M. SHAW, PHILIP A. LOZOWICK, JOHN D. BLACK, and EDWARD J. WENDROW, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

The issues here to be decided involve the third phase of the case to come before this court. The two previous decisions are reported under the same title, *Comrs. of Lincoln*

*Park* v. *Schmidt,* 375 Ill. 474, and 379 Ill. 130. As will there appear, the case was instituted under the Eminent Domain Act on September 27, 1928, in the superior court of Cook county to condemn certain riparian rights of Adolph Schmidt and wife in real estate owned by them in Chicago and bordering on Lake Michigan. In addition to facts appearing in the present record further references to said decisions are necessary in order to put together the chain of events which led to the present appeal.

By our first opinion the trial court was reversed in its order granting a new trial and directed to enter judgment upon the original jury verdict returned May 17, 1932, in the amount of $32,550. Following that mandate the superior court on March 28, 1941, signed a formal written judgment for such amount plus $14,424.55 as interest at five per cent per annum from the date of the jury verdict nearly nine years previously, or a total of $46,974.55. This judgment also provided, among other things, that "petitioner * * * on or before 60 days from March 28, 1941, pay to the defendants * * * the sum of $46,974.55." Interest was allowed upon the theory that section 3 of the Interest Act permits five per cent upon any report, award, or verdict until judgment is entered. The fixed time within which to pay obviously was in compliance with section 10 of the Eminent Domain Act, (Ill. Rev. Stat. 1943, chap. 47, par. 10,) which provides that after verdict the trial court shall order an entry upon the lands by petitioner upon payment of the award "within a reasonable time to be fixed by the court." Thereupon the park commissioners appealed, the principal objection being the allowance of the $14,424.55 interest item. The judgment was affirmed, as appears from our decision in 379 Ill. 130. Although the point was not raised or considered at that time, said second appeal was perfected by notice of appeal filed June 26, 1941, which was within the statutory ninety days of the entry of judgment on March 28,

1941, but more than the sixty days prescribed for payment of the award. The consequence of this detail will appear subsequently in this opinion in connection with the first issue discussed.

A rehearing was denied in the second appeal on March 11, 1942, and nine days later the park commissioners (hereinafter referred to as appellee) filed a motion in the trial court to dismiss the cause. Thereafter the mandate from this court was filed but nothing further appears to have been done until appellee gave notice that its motion to dismiss would be called up for hearing on September 15, 1942, and that the Schmidts should then and there produce any contracts they had made with respect to payment of attorney's fees and other expenses of this suit. In point of time it next appears that appellee's motion to dismiss was granted on December 14, 1942, but this was not confirmed by written order until July 13, 1943, the effect of which is disputed by the parties hereto. Although not suggested until December 22, 1942, it then developed that Adolph Schmidt, Sr., one of the original defendant landowners, had died on November 20, 1941. Accordingly his executors were substituted as parties defendant in his place and they are hereinafter referred to as appellants.

In the meantime hearings had been held pursuant to the notice of September 15, 1942, upon the amount of attorney's fees, costs, and expenses allowable to Schmidt and wife under section 10 of the Eminent Domain Act, as there provided in the event a condemnation judgment should not be paid or the proceedings dismissed. To complete the record, the executors of Adolph Schmidt's estate filed their formal written application for attorney's fees, costs, and expenses under said section 10 on January 12, 1943. That same day, at the conclusion of the evidence offered by appellants in support of their application, and again on January 22, 1943, at the conclusion of all the evidence, appellee moved to deny and dismiss said application

on the basis that the right to attorney's fees, costs, and expenses was purely statutory and did not survive to the executors but abated upon the death of Adolph Schmidt. Its motion also asked that Frieda Schmidt, widow of Adolph Schmidt and one of the original respondents because of her interest in the land and riparian rights involved, likewise be denied any attorney's fees, costs or expense because she had failed to show any payment or obligation for the same. The trial court allowed the motion in its entirety and an order was entered accordingly. From that order, as well as the companion order of the same date dismissing the cause, an appeal comes directly to this court as provided by section 12 of the Eminent Domain Act.

At this juncture it may be observed that preliminary to oral arguments appellee presented in this court its motion for leave to file an additional transcript and to dismiss the appeal, which motion we stated would be taken for consideration with the case as a whole. From the motion it appears that within five days after appellants served their *praecipe* on appellee the latter served a *praecipe* calling for additional parts of the record, but the same were not in fact incorporated in the record filed herein. Appellee thus contends that Rule 36 of this court has been violated in that appellants failed to provide a complete transcript of record. It appears, however, that the principal item called for by appellee's *praecipe* was the evidence in the report of proceedings as to the amount of attorney's fees, costs and expenses; but nowhere do we find that the court below entered any order or judgment actually fixing such amount. Therefore, the question of amount, or whether alleged items of fees, costs and expenses are reasonable or proper, is not in any way now before this court, and what the record might show in such respects is entirely immaterial on this appeal. For these reasons, said motion to dismiss the appeal is denied.

In the consideration of the case on its merits we find that the issues presented may be summarized as follows: First: Did the fact that the second appeal was perfected on June 26, 1941, and, 'therefore, *after* the sixty days allowed for payment of the judgment, have the effect of making said judgment final and collectible as a result of our affirmance, or could the suit still be dismissed or abandoned as in the usual condemnation proceedings under the Eminent Domain Act? Second: If the suit could be dismissed or abandoned after affirmance of the judgment on the second appeal, did the right to attorney's fees, costs, and expenses under section 10 of the Eminent Domain Act abate upon the death of Adolph Schmidt or survive in favor of his executors? Counsel for both appellants and appellee state that the issues presented are of first impression and our own investigation of decided cases confirms such to be the fact. We will discuss the questions in the order stated.

As a general proposition, the right to dismiss a suit instituted under our Eminent Domain Act, or to abandon it by nonpayment of the judgment entered on the verdict, has long been recognized as fundamental to Illinois jurisprudence. (*Chicago and Western Indiana Railroad Co.* v. *Guthrie,* 192 Ill. 579; *Chicago Great Western Railroad Co.* v. *Ashelford,* 268 Ill. 87; *City of Winchester* v. *Ring,* 315 Ill. 358; *County of Will* v. *Cleveland,* 372 Ill. 111.) This follows because of the very nature of the proceeding, which is simply to judicially determine the just compensation to be paid before the property can lawfully be taken or entered upon. In such a suit the condemnor is under no legal obligation to pay the judgment unless it so elects, and a judgment providing that a landowner shall unconditionally recover any particular amount is erroneous. (*City of Bloomington* v. *Miller,* 84 Ill. 621; *City of Chicago* v. *Hayward,* 176 Ill. 130.) Likewise, no execution can be issued or suit prosecuted to collect such a judgment as

might ordinarily be done upon a *quod recuperet* judgment. *City of Chicago* v. *Barbian,* 80 Ill. 482; *Lingle* v. *Clear Creek Drainage Dist.* 281 Ill. 511.

The evils which originally existed in permitting a condemnor to greatly delay payment or in requiring the landowner to bring a suit to determine what was a reasonable time within which to pay were corrected by an amendment of July 1, 1897, requiring the court to fix a time for payment. By the same enactment, the right to dismiss was clarified and landowners were afforded relief by way of attorney fees, costs, and expenses in the event of dismissal or abandonment, which was highly proper, because of the involuntary nature of the proceeding insofar as they were concerned. Accordingly, section 10 has since read as follows, the amendments being in italics: "The judge or court shall, upon such report, proceed to adjudge and make such order as to right and justice shall pertain, ordering that petitioner enter upon such property and the use of the same upon payment of full compensation as ascertained as aforesaid, *within a reasonable time to be fixed by the court,* and such order, with evidence of such payment, shall constitute complete justification of the taking of such property: *Provided, That in case the petitioner shall dismiss said petition before the entry of such order or shall fail to make payment of full compensation within the time named in such order, that then such court or judge shall, upon application of the defendants to said petition or either of them, make such order in such cause for the payment by the petitioner of all costs, expenses and reasonable attorney fees of such defendant or defendants paid or incurred by such defendant or defendants in defense of said petition, as upon the hearing of such application shall be right and just, and also for the payment of the taxable costs.*"

While it is true that the statute only refers to a dismissal "before the entry of such order," still the obvious inference of the remaining portion is that suit shall be

considered as abandoned if the judgment is not paid within the specified time limit. Such was clearly held in *Forest Preserve Dist.* v. *Kean,* 303 Ill. 293, wherein this court stated: "The right to enter upon and appropriate to the public use private property does not depend upon an award or judgment fixing compensation but is conditioned upon the payment of such compensation, and the failure to pay deprives the petitioner of any right to the propery or its possession and the proceeding is in law considered as abandoned. (*City of Chicago* v. *Barbian,* 80 Ill. 482; *Union Mutual Life Ins. Co.* v. *Slee,* 123 id. 57.)"

Even though the motion to dismiss the case, filed by appellee on March 20, 1942, might more appropriately have been entitled a motion to confirm abandonment, nevertheless the legal and practical significance was the same. It is evident that some such procedure should be followed whenever an eminent domain proceeding is dismissed or abandoned, so that no cloud will remain upon the title to the land in question.

Thus, the ultimate dismissal of the suit by the trial court would appear to have been in keeping with well-established decisions and custom. Appellants argue, however, when it is observed, as pointed out above, that the appeal from the judgment for $46,974.55 was taken *after* the sixty days allowed for payment, and affirmed by this court by opinion reported in 379 Ill. 130, it must be held that said judgment became final, unconditional, and collectible as any *quod recuperet* judgment. As an alternative, the appellants contend that if appellee's failure to pay said judgment within sixty days after it was first entered constituted an abandonment, then by taking an appeal it elected to be bound by the decision of this court—which was that the judgment be affirmed. In making such contentions appellants obviously overlook the fact that they made no objection to the appeal after the sixty days but joined therein by filing an extensive brief and opposing a

reversal in every proper manner. By so doing, Adolph Schmidt and his wife must be held to have assented to such appeal and to have agreed that the suit could be abandoned even if the judgment were affirmed, which it was, just as in any eminent domain proceeding where the appeal might have been taken within the time allowed for payment of judgment. Such action might also be characterized as an estoppel against the Schmidts because they knowingly permitted an appeal for the usual purpose of finally determining the amount to be paid if possession was desired. Appellee, having apparently decided the amount was more than warranted in view of the benefits to be received or more than the budget would then permit, should still have the normal right to abandon.

This follows, not by any previous direct holding of this court, but by necessary analogy from the long line of cases interpreting the right of a condemnor to abandon and the effect of nonpayment of such a judgment. For example, in the above-cited case of *Chicago Great Western Railroad Co.* v. *Ashelford*, 268 Ill. 87, this court upheld the right of the landowner to secure his proper attorney's fees and expenses even though the condemnor wanted the property but had failed to pay the judgment within the designated time, saying: "Appellant failed to make payment of the compensation awarded to appellee within the time specified in the judgment and thereby abandoned the condemnation proceedings. Under such a state of facts, appellee, under the statute, was entitled to an order requiring appellant to pay to him the expenses incurred or paid by him in making his defense to the petition." (Page 93.) The same result occurred in *Forest Preserve Dist.* v. *Kean*, 303 Ill. 293, even though the condemnor was only three days late in making its deposit and after the amount of the verdict had been sustained upon a previous appeal. Thus, had the appellants on the sixty-first day after March 28, 1941, or on any subsequent date before joining in the appeal, appeared

before the superior court of Cook county and asked for their attorney's fees, costs and expenses under section 10 of the Eminent Domain Act they would have been entitled to the same by the very terms of that statute. Or, had appellants properly moved to dismiss the appeal so as to make application under the proviso of section 10 they would likewise have been entitled to such relief, because any other rule would entirely nullify the intent and purpose of section 10.

A comparable situation occurred in *City of Winchester* v. *Ring,* 315 Ill. 358, where it was held: "The effect of the appeal was to stay all proceedings in execution of the judgment and the running of the time within which payment of the compensation was to be made. * * * The decree being rendered on August 14, and the payment being required by December 1, the time allowed for such payment was one hundred and nine days, and this period of one hundred and nine days did not begin to run until after the affirmance of the judgment." (Page 360.) While it is true that the appeal there was taken within the time fixed in the judgment for payment, yet, if any different rule is applied under the circumstances here presented, a landowner would be permitted to give an eminent domain judgment a stamp of finality never intended and not to be desired. Or, if the final judgment was not pleasing he might elect to take attorney's fees, costs, and expenses on the basis of the prior abandonment. Either situation is entirely contrary to the basic principles and purposes of such proceedings. As pointed out in many cases, the 1897 amendment requiring the court to fix a time within which the award must be paid was obviously designed to prevent uncertainty and unnecessary delay. Since that date a condemnee has been able to know how long he must wait before he can sell his land, improve it, or otherwise deal with it free from the effect of a particular condemnation suit. This does not mean that he is prevented from ac-

cepting payment of the judgment and surrendering possession after the date fixed for payment if he still is agreeable to doing so. However, if he desires to have the benefit of the statute he must assert his right in apt time,—in this instance, before taking issue on the second appeal.

Both appellants and appellee cite in their briefs numerous other cases purportedly bearing upon the question of when a condemnation judgment becomes final and whether it is collectible as a *quod recuperet* judgment. In so doing, counsel overlook previous admonitions of this court, because many of such citations involved proceedings under the Local Improvement Act, the scheme and provisions of which are quite different from the Eminent Domain Act under which this case was filed. See *Comrs. of Lincoln Park* v. *Schmidt,* 379 Ill. 130, at page 134.

In deciding the second question above stated, *i.e.,* the survivability of the right to attorney's fees, costs and expenses, after the death of Adolph Schmidt, we are met with vigorous arguments on the part of appellants and appellee. Supporting affirmance of the judgment below, appellee urges that no action for attorney's fees, costs and expenses accrued to Adolph Schmidt during his lifetime because the suit was not then abandoned or dismissed and consequently there was nothing in that connection to survive in favor of his executors. Furthermore it contends, even assuming such right had accrued in his favor during his lifetime, it did not survive to his executors because the right is one created by statute and there is no survival provision in the Eminent Domain Act or in any other statute. On the first proposition appellee cites *Bradley* v. *Federal Life Ins. Co.* 295 Ill. 381, which involved an action by an administrator against an insurance company for damages resulting from the agent's delay in forwarding the intestate's application for an accident policy. That case, however, simply held that when, as there conceded by the interested party, no cause of action accrues to a person in

his lifetime there is, of course, nothing which survives to his administrators or executors. In the case at hand appellants challenge the proposition that no right accrued previous to Adolph Schmidt's death and accordingly that will be considered in connection with the question of survival.

As to the precise question of survival, appellee relies principally upon *Shedd* v. *Patterson,* 312 Ill. 371, and *Wilcox* v. *Bierd,* 330 Ill. 571, which incorporate all statements and principles announced in other similar citations. In the first-mentioned case we held that an action for damages for the malicious prosecution of civil suits disputing the title to a chattel real (leasehold) did not survive to the plaintiff's legal representative since it was not an action for damages for injury to real estate within the meaning of the survival statute and did not survive at common law. The decision in that case rested entirely upon a construction of section 123 of the Administration Act, (now section 339 of the Probate Act,) which provides: "In addition to the actions which survive by the common law, the following shall also survive: Actions of replevin, actions to recover damages for an injury to the person (except slander and libel,) actions to recover damages for an injury to real or personal property, or for the detention or conversion of personal property, and actions against officers for misfeasance, malfeasance or nonfeasance of themselves or their deputies, and all actions for fraud or deceit." (Ill. Rev. Stat. 1937, chap. 3, par. 125.) Likewise, the *Wilcox case* was resolved primarly upon the same section of the Administration Act. The ultimate point there decided was that an action for wrongful death under the Injuries Act did not survive the death of the next of kin whom the statute was designed to benefit.

In the present case, however, there are several reasons why we have no occasion to turn to the survival provisions of the Administration Act. Section 5 of the Eminent Domain Act provides, insofar as applicable here: "Should

it become necessary at any stage of the proceedings to bring a new party before the court or judge, the court or judge shall have the power to make such rule or order in relation thereto as may be deemed reasonable and proper; and shall also have power to make all necessary rules and orders for notice to parties of the pendency of the proceedings, and to issue all process necessary to the execution of orders and judgments as may be entered." Thus it is apparent that within the very statute, itself, where attorney's fees, costs and expenses are provided for, it is also provided that new parties may be brought in at any stage of the proceedings where necessary. One of the times when it becomes necessary to add new parties is in the event a landowner dies, which was upheld in *South Park Comrs. v. Livingston,* 344 Ill. 368. Other occasions would be when the property was sold or a new claimant appears. The plain intention of the legislature was that eminent domain proceedings should survive and that proper parties should be substituted upon the death of any interested person so that the cause may proceed without delay. If this type of proceeding were held to terminate as to every landowner who died, large proceedings could only rarely be completed even though a condemnor is authorized to join several parcels in one suit. If the proceeding survives for the condemnor, then upon principles of mutuality and justice the right to attorney's fees, costs and expenses, provided by the same act, should also survive. To hold otherwise would permit one or more of several parties to an eminent domain proceeding to secure attorney's fees, costs and expenses upon a dismissal or abandonment and at the same time deny such recovery for identical items to another defendant or his representatives in the same suit simply because he had died in the meantime. The act contemplates no such inequality and is not thus divisible.

Closely akin to the propositions just stated is the effect upon the question at hand resulting from the very nature

of the case. That is, eminent domain proceedings are peculiarly different from almost any other type of suit and certainly much different basically, from *Shedd* v. *Patterson,* and *Wilcox* v. *Bierd,* heretofore discussed. This distinction is most aptly stated by Nichols in his treatise on "The Law of Eminent Domain," vol. II, 2d ed., sec. 343, as follows: "The owner of land taken by eminent domain stands in a far different position from a defendant in an ordinary suit. The latter has ordinarily brought the trouble upon himself, if he is liable at all, by breaking a contract or committing a tort, and it is only just that he should pay the costs of the legal proceedings. But condemnation proceedings are brought against a man because he happens to own available land, and, although if a decree of condemnation is finally entered even after a contest on damages only, it is in a sense a judgment in favor of the condemning party and consequently against the owner although the latter's contention in respect to damage may have prevailed." As there indicated, and as hereinabove clearly shown, a condemnor can dismiss a petition at will or refuse to pay even after judgment is affirmed. Yet he can immediately thereafter file another suit in an attempt to get the same land more cheaply, again dismiss, and, conceivably, on *ad infinitum.*

Experience has shown all too well the abuses which could thus be made of the privilege of condemnation and, accordingly, the 1897 amendment conditioned the right to dismiss or abandon upon the payment by condemnor of the costs, expenses, and reasonable attorney's fees expended or incurred by defendants. Only in this way could there be a guarantee of just compensation such as was intended by section 13 of article II of the constitution. When this suit was commenced in 1928, section 10 of the Eminent Domain Act was in full force and effect and Schmidt was entitled to rely thereon when securing counsel and expert witnesses, knowing that he would either receive

just compensation for his land or an allowance for costs, expenses and reasonable attorney's fees if appellee dismissed or abandoned. Thus, in *City of Chicago* v. *Collin,* 302 Ill. 270, in holding that an amendment to the Revenue Act could not affect the award to be made in a pending suit, it was said: "By virtue of the provision of the Eminent Domain Act and the law applied thereto, the owner of land sought to be taken for public use acquires on the day the petition is filed an immediate, fixed and determinate right to any compensation that may be allowed and paid in the future and which takes the place of the land condemned.. The right of the owners of the lots taken in this case was therefore a vested right, which could not be impaired by subsequent legislation providing that a portion of the compensation should be paid to others." (Page 275.) In principle, the same rule applies with equal if not greater force to costs, expenses and attorney's fees. As pointed out by appellants in their brief, no private purse can compete with the public treasury in the hiring of counsel and expert witnesses; nor should a public body be permitted to speculate with the fortunes of its subjects long enough to allow it to interpose the grave as a barrier to prevent reimbursement intended by our legislature.

From the foregoing it also follows that the proviso of section 10 of the Eminent Domain Act created at least an inchoate right to have costs, expenses and reasonable attorney's fees assessed. The suit had not been dismissed or abandoned when Adolph Schmidt died on November 20, 1941, and from that day forward his executors simply replaced him in the suit even though the death was not suggested or an order of substitution entered until December 22, 1942. Had appellee wanted to complete the suit by payment it could not have been prevented from doing so merely because of Schmidt's death. By the same token, it should not now be permitted to say that appellants are prevented from having the alternative relief provided by the

same act. The right to dismiss or abandon provided under section 10 is conditioned upon payment of certain costs. The condition must be fulfilled. In reaching these conclusions, the rule of survival of actions is in noway extended or enlarged because the matter of assessing costs does not have the characteristics of a true action as contemplated by the survival provision of the Administration Act. The fixing of costs, expenses and reasonable attorney's fees is merely the last step in an eminent domain proceeding if the condemnor elects to dismiss or abandon. It takes no separate suit or action to secure redress; it is a mere continuation of a suit which does not abate.

The many other cases cited by appellee are in noway contrary to the foregoing conclusions but relate to different situations wherein different principles apply. *Olson v. Scully,* 296 Ill. 418, and *People ex rel. Peace v. Taylor,* 342 Ill. 88, for example, were election contests and involved purely personal rights, as the representatives of the deceased could not succeed to the office. *People ex rel. Mc-Pherson v. Western Life Indemnity Co.* 261 Ill. 513, involved a *mandamus* action which is not enumerated in the survival statute and, furthermore, was basically to enforce only a personal right. *Glos v. Glos,* 341 Ill. 447, likewise concerned the personal right of a party to appeal from an order admitting a will to probate.

Therefore, the order dismissing the suit is affirmed and the order abating the petition for costs, expenses and fees is reversed, and the cause is remanded to the superior court of Cook county, with directions to complete such hearings as may be necessary to finally fix and determine all costs, expenses and reasonable attorney's fees of Adolph Schmidt and his executors in accordance with section 10 of the Eminent Domain Act.

*Affirmed in part and reversed in part and remanded, with directions.*