On April 17, 1934, the plaintiffs, Dollie F. Leitch and Olive A. Leitch, filed this suit against The New York Central Railroad Company, The Chicago Junction Railway Company, The Union Stock Yard Transit Company of Chicago, The Chicago River and Indiana Railroad Co., and five industrial corporations having plants near track-age of said railroads in Chicago, to recover for their alleged use and occupation of certain real estate owned by plaintiffs. The case was tried upon a second amended complaint which was dismissed as to The New York Central Railroad Company and the five industrial corporations upon the motion of said defendants. A judgment for $29,000 was entered against The Chicago River and Indiana Railroad Co., only, and no appeal was taken therefrom by any defendant. However, plaintiffs appealed to the Appellate Court from that part of the judgment which held defendant The Chicago Junction Railway Company not liable and the judgment of the trial court was there affirmed. (Leitch v. NewYork Central Railroad Co. 321 Ill. App. 476.) The Appellate Court certified that more than $1500 was fairly involved and we granted plaintiffs' petition for leave to appeal.
A proper understanding of the issues requires the facts to be stated in somewhat more detail than related by the *Page 238 
Appellate Court opinion. From the pleadings and a stipulation of facts, together with the brief amount of testimony introduced, the following summary may be had. Beginning with about 1890, plaintiffs' ancestors, and then plaintiffs, leased lot five of a certain Chicago subdivision, (herein sometimes referred to as the "Leitch Tract,") to defendant The Union Stock Yard Transit Company of Chicago, (hereinafter referred to as "Stock Yard Co.,") by successive annual written leases, the last one being dated February 1, 1916, and covering the period from May 1, 1915, to April 30, 1916. The lot contains 3.1 acres and is located in the concentrated area of packing and manufacturing industries at Thirty-ninth and Halsted streets, Chicago, Illinois. Said lease of February 1, 1916, provided an annual rental of $2400 (which in former years had been $1400) plus payment of taxes, and was extended for one year by verbal agreement. All fixed rentals and taxes were paid regularly down to April 30, 1917, when the verbal extension terminated, but, for reasons which will later appear, taxes on the Leitch Tract continued to be paid by or in the name of Stock Yards Co. until 1923.
The second important transaction affecting this case occurred December 1, 1913. On that date Stock Yard Co., by formal written instrument, granted, demised and leased, in perpetuity, to defendant The Chicago Junction Railway Company (hereinafter referred to as "Junction Railway") all its property, including main-line tracks, spurs, and switches, for a large annual rental payable in monthly installments. Although that lease described considerable real estate of Stock Yard Co., it did not refer to the Leitch Tract or any part thereof. The amended complaint alleged that Junction Railway succeeded to the Stock Yard Co. railroad franchises and occupied the entire tract from the date of its lease to May 19, 1922, (except during the possession of the Director General of Railroads from December 28, 1917, to March 1, 1920) *Page 239 
by use of the main lines and switch tracks to the plants of the industrial defendants. The answer of Junction Railway admitted usage of only a 34-foot strip (containing .387 acres) along the southeasterly boundary of said lot five adjacent to its main right-of-way.
The third lease to be considered was executed May 19, 1922. By that indenture, Junction Railway demised to defendant The Chicago River and Indiana Railroad Co., (hereinafter referred to as "River Railroad,") all the railroad property and franchises "owned by or leased to and operated by" the lessor. The term of the lease was 99 years and thereafter in perpetuity at the option of lessee. Again the Leitch Tract was not specifically described but plaintiffs allege that it was indirectly included by the general language just quoted and by a reference to the lease of December 1, 1913. Said indenture was also joined in by Stock Yard Co., as the parent company of Junction Railway, and the defendant New York Central Railroad Company, as parent company of River Railroad, and provided for the purchase of all properties involved at the option of the New York Central which further guaranteed performance by River Railroad. After May 19, 1922, Junction Railway ceased to use or occupy any part of the Leitch Tract and River Railroad took over possession and operation of all properties described in the lease of that date, which condition existed down to the filing of this case. The latter also assumed payment of taxes except for the years 1928, 1932 and 1933.
This last-mentioned lease contained another provision to the effect that Junction Railway should prosecute to a conclusion, for the benefit of River Railroad, any pending condemnation suits. Said requirement referred, at least in part, to a certain condemnation suit then pending in the circuit court of Cook county, Illinois, by Junction Railway against the plaintiffs herein, to acquire the above mentioned 34-foot strip off the southeast side of the Leitch *Page 240 
Tract. That condemnation proceeding had been filed January 26, 1918, and on the same day an injunctional order was entered in the suit directing that "Dollie F. Leitch and Olive Leitch * * * be and they are hereby enjoined from attempting to interfere or interfering in any manner by legal proceedings or otherwise with the possession of * * * Chicago Junction Railway Company of that part of the premises described in the petition * * * which is now occupied by the railroad and tracks of said petitioner * * * until the final disposition of this proceeding, or until the further order of this court." Although Junction Railway and then River Railroad continued to use and occupy the 34-foot strip, as above related, apparently nothing further was done in the condemnation suit until it was dismissed and the injunctional order dissolved on May 2, 1934, which was fifteen days after this case was filed.
Many other details appear from the record, such as the alleged notices of plaintiffs to surrender possession on April 30, 1920, and their prayer for an amount which was double a much higher rental for willful holding over, but inasmuch as all demands have been expressly waived except for use and occupation by Junction Railway after April 30, 1917, we need only refer to a few additional matters. The present claim of plaintiffs is based primarily on section 1 of our Landlord and Tenant Act, which, when this case was filed, provided: "That the owner of lands, his executors or administrators, may sue for and recover rent therefor, or a fair and reasonable satisfaction for the use and occupation thereof, by an action of debt or assumpsit, in any court of competent jurisdiction, in any of the following cases: * * * Second — When lands are held and occupied by any person without any special agreement for rent." (Smith-Hurd Stat. 1935, chap. 80, par. 1.) To this, Junction Railway answered that the alleged claim was barred by the five-year Statute of Limitations. *Page 241 
(Smith-Hurd Stat. 1935, chap. 83, par. 16.) In reply, the plaintiffs urged that the Statute of Limitations was tolled by the injunction order entered in the condemnation suit on January 26, 1918, as provided by section 24 of the limitations statute, to-wit: "When the commencement of an action is stayed by injunction, order of a judge or court, or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the actions."
Pursuant to stipulation, the case was tried by the court without a jury upon all questions of law and fact, except as to the fair and reasonable cash rental value during such time as the court might determine proper, if any. As above indicated, the court found that this action against Junction Railway was barred and that Stock Yard Co. was not liable, but it held plaintiffs entitled to recover from River Railroad for use and occupation during the five years immediately preceding the filing of this case which latter issue was submitted to a jury with the result already stated. In view of said partial recovery, plaintiffs have further reduced their claim against Junction Railway to use and occupation from May 1, 1917, to April 17, 1929, which is the sole issue of this appeal.
That plaintiffs have abandoned all but their use-and-occupation claim against Junction Railway clearly appears from the following statement in their brief on file with this court: "As no point is now made on this appeal except to claim liability of defendant, appellee, for value of the use and occupation of the premises, no further attention will be paid to any of the other various alternative rights of action alleged in the pleadings." In reliance thereon, appellee makes the preliminary contention in its brief that the facts disclosed by the record do not support a cause of action for use and occupation by plaintiffs against Junction Railway for any period, but on the contrary, exclude such a type of action, whereby it should *Page 242 
be unnecessary to consider the Statute of Limitations. This position is based upon some principles of law well established in this State.
For example, it has long been the law of Illinois that if the assignee of a lease does not assume the obligations thereof, then, as between the original lessor and such assignee there is privity of estate but not privity of contract; and the assignee is liable for rent only while such privity of estate continues, and may terminate further liability by assigning the lease and going out of possession. On the other hand, if there is an assumption of the lease obligations, then privity of contract also results and the assignee cannot shake off his contractual liability by making an assignment or going out of possession.(Springer v. DeWolf, 194 Ill. 218; Consolidated Coal Co. v.Peers, 166 Ill. 361.) The rule was otherwise stated and enlarged upon in Sexton v. Chicago Storage Co. 129 Ill. 318, where it was said: "The general principle, as held by all the authorities, is, that where the lessee assigns his whole estate, without reserving to himself a reversion therein, a privity of estate is at once created between his assignee and the original lessor, and the latter then has a right of action directly against the assignee on the covenants running with the land, one of which is that to pay rent; but if the lessee sub-lets the premises, reserving or retaining any reversion, however small, the privity of estate between the sub-lessee and the original landlord is not established and the latter has no right of action against the former, there being neither privity of contract nor privity of estate between them."
Thus, appellee contends as follows: When Stock Yard Co. inferentially assigned its interest in the Leitch Tract by the demise to Junction Railway on December 1, 1913, and the latter thereupon entered possession, only privity of estate was created between plaintiffs and Junction Railway, under which it became liable for the fixed rental *Page 243 
provided by the annual lease then in force between plaintiffs and Stock Yard Co. The new obligation was for rent, not use and occupation, because the covenant to pay rent ran with the land by virtue of the privity of estate. (Springer v. DeWolf, 194 Ill. 218; Consolidated Coal Co. v. Peers, 166 Ill. 361.) While the then current lease between plaintiffs and Stock Yard Co. expired April 30, 1914, it was successively renewed, as explained above, until April 30, 1917. By payment of taxes until 1923, Stock Yard Co. became a tenant from year to year during that time. Hence, Junction Railway became a year-to-year implied assignee of the several annual terms of Stock Yard Co. and continued to be liable for the fixed annual rental, not for use and occupation. Carrying this reasoning to its natural conclusion, appellee, Junction Railway, finally contends that after its lease to River Railroad on May 19, 1922, it concededly was no longer in possession and thus ceased to be liable as an assignee because the privity of estate with plaintiffs was thereby terminated. If, as suggested by plaintiffs, the Junction Railway became a sublessee under the indenture of December 1, 1913, then by the authority of Sexton v.Chicago Storage Co. 129 Ill. 318, it was liable for rent, not use and occupation, and then only to its immediate landlord, Stock Yard Co.
While the contentions of Junction Railway set forth in the preceding paragraph appear to be well founded upon the theories of the cases there cited, in the absence of more complete evidence we prefer not to rest our ultimate conclusion entirely on what, by further careful investigation, might prove to be an unwarranted implication that Stock Yard Co. and Junction Railway became lessee and assignee, respectively, from year to year between April 30, 1917, and May 19, 1922. Giving plaintiffs the benefit of this doubt and accepting their contention that during those years and even up to April 17, 1929, Junction Railway used and occupied at least part *Page 244 
of the Leitch Tract "without any special agreement for rent," as provided in section 1 of the Landlord and Tenant Act, still the present claim appears to be barred by the five-year statute of limitations as held by the Appellate Court.
At the outset it must be remembered that the condemnation suit in which the injunctional order was entered described only the 34-foot strip along the southeasterly side of the Leitch Tract. Therefore, the force of the injunction order could not possibly extend to any other part of the tract and plaintiffs' claim for use and occupation of the remainder of the tract is, beyond doubt, absolutely barred. That limits our remaining considerations to the effect of the injunction order as to a suit for use and occupation of the 34-foot strip.
Inasmuch as the injunction order does not expressly prohibit a suit for use and occupation, our principal inquiry is whether such an action would have violated the intention or spirit thereof. While this court naturally has, and requires, the utmost respect for any judicial order solemnly entered, yet by no strained construction would we want to impede the normal course of affairs or prevent litigants from promptly recovering what is justly due them. As authority for their view that the intention and spirit of said injunction order did prevent the bringing of a suit for use and occupation, plaintiffs cite several authorities, such as Grand J.C. Co. v. Dimes, 17 Simon's Ch. 38;Ex parte Miller, 129 Ala. 130; Gibbs v. Morgan, 39 N.J. Eq. 79;Stodder v. Rosen T.M. Co. 247 Mass. 60, and West D. Co. v.Koppelman, 216 Ill. App. 438. However, we find from an inspection of said cases that the factual situations were much different than here presented and each involved an obvious attempt to circumvent the plain prohibition of a particular injunction order. The most helpful case cited by appellee is that of People
v. *Page 245 Diedrich, 141 Ill. 665, wherein this court approved certain other authorities which stated the rule for ascertaining the effect of an injunction as follows: "In construing an injunction order it is not to be supposed that it was intended to restrain acts which would not be injurious to the rights of the complainant, * * *. Hence the act must be not only in defiance of the restraint, but must deprive the other party of some substantial right or affect some substantial interest."
Applying that rule, which is obviously logical, we can not see how a suit for use and occupation, as plaintiffs have now chosen, would have challenged or interfered "with the possession of Junction Railway," to quote the very words of the injunction. It has never been held that a suit to enforce payment of rent due under a specific lease is in any manner an interference with the peaceable possession to which a lessee is entitled. A suit for use and occupation is in nowise different from a suit for rent in that respect, inasmuch as both actions have the same basic objective. The very purpose of a statute of limitations is to require any necessary litigation to be brought within such times as the particular facts and circumstances may be proved with the utmost certainty and before adequate proof has become stale or entirely lost. The merit of such requirement is readily apparent herein because in 1918, or the years immediately following, it would have been a much more simple and certain procedure to determine just what part of the Leitch tract was being used, by whom and why rent was not being regularly paid. All of those matters are now either obscure or entirely unprovable.
It is true that had any such suit resulted in a judgment, and the enforcement thereof by execution or sale interfered with Junction Railway's possession of the 34-foot strip, then quite another question would have arisen. *Page 246 
However, it clearly appearing from the injunction order and from the intent and purpose thereof that the possession of appellee was the sole subject matter of said order, we are impelled to the conclusion that the present type of action was never barred thereby. Section 24 of the Statute of Limitations acts as a toll only when "the commencement of an action is stayed." As demonstrated above, the injunction order of January 26, 1918, cannot reasonably be said to have prevented the timely commencement of this suit.
A further reason for such conclusion readily presents itself when we consider the nature of eminent domain proceedings. Normally, the purpose of such suits is to gain possession (and, incidentally, some degree of ownership) of particular lands, and it has always been held in this State that a condemnation award bears interest from the date of entry of possession thereunder until the same is paid. In discussing this very question, this court, in Phillips v. South Park Comrs. 119 Ill. 626, said: "When, therefore, the possession of the land is taken, the compensation is due; and if due and payable, it, in justice, ought to draw interest from that time. Here, the South Park Commissioners went into the possession of the land on the 27th day of August, 1870, and they have had the use of the property ever since. They have also had the use of the money which represents the property, although it was due to the owner when they took possession. It is neither equitable nor right that they should have the use of the land and of the money; but as they have had the land, and withheld the payment of money, they should be required to pay interest thereon, as ruled in the circuit court." While it is true that Junction Railway was already in possession when the condemnation suit was filed on January 26, 1918, yet such suit did not of itself terminate any liability for rent or use and occupation. On the contrary, it was obligated to continue paying for possession, *Page 247 
except that the amount would be for rent or use and occupation until an award, if any, and thereafter interest, as directed in the Phillips case. Condemnation suits often extend over a long period of years and even then may be abandoned by the condemnor,(Comrs. of Lincoln Park v. Schmidt, 386 Ill. 550,) whereby it is obvious that, in the meantime, the occupant must pay the prescribed rental or for use and occupation.
For the foregoing reasons, the judgment appealed from must be affirmed.
Judgment affirmed.