**West Disinfecting Company, Defendant in Error, v. Harold I. Koppelman, Plaintiff in Error.**

**Gen. No. 24,953.**

1. CONTEMPT, § 51*—*what is nature of proceeding.* A proceeding for contempt for violating an injunctional order is a civil or remedial proceeding conforming in its pleadings, character and quantity of proof required, and in its course through the Appellate tribunals, to the rules and practice applicable to other chancery proceedings.

2. APPEAL AND ERROR, § 1396*—*when chancellor's findings of fact will not be disturbed.* In a chancery proceeding where the chancellor hears the witnesses testify in open court, his findings of fact, when the testimony is conflicting, are entitled to great weight

---

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

West Disinfecting Co. v. Koppelman, 216 Ill. App. 438.

and will not be disturbed on appeal unless manifestly against the weight of the evidence.

3. CONTEMPT, § 69*—*when evidence sustains finding of violation of injunction against use of trade lists.* Evidence *held* to sustain a finding of a chancellor of the use of trade lists, trade information and other memoranda in the use of business in violation of an injunction, rendering the violators subject to contempt of court.

4. CONTEMPT, § 37*—*what constitutes violation of injunction against using or giving away certain trade information.* Where an injunction prohibited certain persons from using or giving to any person or corporation certain trade information prepared, compiled or assembled between certain dates, the copying of such information after the date last specified, and its use thereafter, was a violation of the injunction, as the information was acquired prior to such date.

5. CONTEMPT, § 37*—*violation of spirit of injunction as breach of court's mandate.* The violation of the spirit of an injunction, even though its strict letter may not have been disregarded, is a breach of the court's mandate.

Error to the Circuit Court of Cook county; the Hon. KICK-HAM SCANLAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed January 30, 1920. Rehearing denied February 10, 1920.

**Statement of the case.** This writ of error was sued out February 11, 1919, by Harold I. Koppelman, to reverse an order of the circuit court of Cook county, entered August 28, 1918, adjudging five respondents (Harold I. Koppelman, Jacob L. Brenn, Arthur C. Tretow, Lillian Koppelman and U. S. Sanitary Products Corporation) guilty of contempt of court in violating an injunction theretofore issued by said court, and imposing punishment severally upon them. Harold I. Koppelman was sentenced to 60 days in the county jail and fined $500; Brenn was sentenced for the same period in said jail and fined $50; Tretow was sentenced to 5 days in said jail and fined $50; Lillian Koppelman was fined $300, and the U. S. Sanitary Products Corporation was fined $1,500. Four other several

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

writs of error were sued out on February 11, 1919, by Jacob L. Brenn, Arthur C. Tretow, Lillian Koppelman and the above-named corporation to reverse said order. These causes were docketed in this court as Nos. 24,954, 24,955, 24,956, and 24,957, and on February 11, 1919, it was ordered that each be consolidated for hearing with the present case, No. 24,953, and that the record, abstracts and briefs in the present case stand as the record, abstracts and briefs in each of said four other causes.

The West Disinfecting Company (hereinafter referred to as the West Company) is a New York corporation engaged in manufacturing and selling disinfectants and sanitary supplies and appliances. Prior to October 3, 1917, Harold I. Koppelman was the manager of its Chicago branch, under a contract dated June 17, 1912, and covering a 5-year period from January 1, 1913, to December 31, 1917, at a salary of $10,000 per year and a certain percentage of the net profits of the business of the Chicago branch. It was provided in the contract that Koppelman, during the term thereof, would not become interested, directly or indirectly, in any business similar to that of the West Company or be engaged in any other business. Before the expiration of the term of the contract he was discharged on October 3, 1917. Prior thereto Lillian Koppelman, his sister, was employed as secretary to the president of the West Company at its principal office in New York, and Jacob L. Brenn and Arthur C. Tretow were employed in the Chicago office under Koppelman.

On December 21, 1917, the West Company filed its bill in the circuit court of Cook county against Harold I. Koppelman, Jacob L. Brenn, Lillian Koppelman and Edmund Bruder. The bill set forth the foregoing facts and further averred in substance that during Koppelman's employment the secrets, policy and control of

the business within the territorial jurisdiction of the Chicago branch had been committed to him; that he had become familiar with its most valuable trade information which he was under the duty of not disclosing to others; that the company had implicit confidence and trust in his loyalty and integrity until within 5 days of his discharge, but that for a period of several years he had been secretly committing numerous breaches of trust; that, among other things, he had negotiated with Edmund Bruder, an inventor, to acquire from him certain appliances and patent rights thereto, which Bruder had offered to Koppelman for use by the company, but which Koppelman had appropriated to his individual use, and that such negotiations had resulted in the acquisition by Koppelman of devices and patent rights which rightfully belonged to the company; that during the year 1917 Koppelman had approached Arthur C. Tretow, Jacob L. Brenn and other employees of the company with offers of employment in a competitive business which he was planning to establish; that for the purpose of using all available data belonging to the company, in competition with it, he had systematically caused daily lists to be made of all orders received by the Chicago branch, including the name and address of the customer, the items purchased and the price paid; that such lists were in his possession or under his control after his discharge; and that he was at the time engaged in organizing a competitive business in which the lists would be used.  The bill charged that Jacob L. Brenn had been fully conversant with the transactions between Koppelman and Bruder and had been assisting Koppelman in the furtherance of the latter's scheme; and also charged that Lillian Koppelman had been assisting her brother in concealing the latter's wrongdoings from the company.  The bill prayed for a discovery, an accounting and an injunction.  A pre-

liminary injunction was granted in which it was ordered and decreed that Harold I. Koppelman, Jacob L. Brenn, Lillian Koppelman and Edmund Bruder, "and all persons, associations, firms and corporations assisting, aiding, confederating or conspiring with them and having knowledge thereof," be restrained (among other things) from

"(c) Using or giving any person, firm, corporation or association, other than the West Disinfecting Company, access to any trade lists or trade information or lists of customers, or data or memoranda or other writings in respect to the business of West Disinfecting Company, prepared, compiled or assembled or acquired in any wise during the period between January 1, 1913, and October 3, 1917."

On December 31, 1917, Koppelman filed his motion to dissolve the injunction. The motion was supported by his affidavit, and also by his verified answer to the bill of complaint. In said answer he admitted that he had caused lists of purchasers of the West Company to be made daily for a period of several years during his employment as manager of the Chicago branch. He further stated that such lists were prepared to facilitate the handling of the business and were not made for his particular benefit or for any ulterior motive; that he, in all instances, "destroyed every one of such lists at least weekly and sometimes daily"; that he "never made any copies of said lists or any of them, and has not preserved any of said lists or copies thereof, nor has he permitted any of such lists or copies thereof to leave the office of complainant," and that "he has not now, nor did he at any time since his discharge, have in his possession or control any such lists or copies thereof or any memoranda from which the names of such customers or any of them might be ascertained." After a full hearing, at which oral testimony was given, the chancellor on January 23, 1918, overruled the motion to dissolve the injunction, and re-

fused to modify it. Koppelman prosecuted an appeal to this Appellate Court, where the ruling of the court was affirmed. (212 Ill. App. 654.)

After his discharge from the West Company, on October 3, 1917, Koppelman completed the organization of a competitive business, and about January 1, 1918, he had an office and factory in running operation. After the certificate of complete incorporation was issued on February 27, 1918, he continued the business under the name of U. S. Sanitary Products Corporation (hereinafter referred to as the Koppelman Corporation) with a capital stock of $160,000. He was president and the largest stockholder; Lillian Koppelman, whose services in the New York office of the company terminated within a day or two after the discharge of her brother, became vice president; Brenn, who was discharged shortly prior to November 3, 1917, became factory superintendent; and Tretow, who left the West Company late in November 1917, became secretary and one of the board of directors.

On August 8, 1918, the West Company filed in said circuit court its verified petition for a writ of sequestration, and for a rule on Harold I. Koppelman and the other respondents to show cause why they should not be punished for contempt of court for violating said injunction. After setting forth the issuance of said injunction and the refusal of the court upon motion to dissolve or modify the same, it was alleged in the petition, among other things, that during the employment of Harold I. Koppelman, as manager of the Chicago branch of the West Company, and prior to October 3, 1917, he conceived the purpose of organizing and conducting a competitive business; that in the development of such purpose he had committed the acts of malfeasance and misconduct as more particularly set forth in the bill of complaint of the West Company; that after the termination of his employ-

ment with the West Company, and in fulfillment of said purpose, he organized said Koppelman Corpora-. tion, the affairs and business of which were dominated and directed by him; that said Lillian Koppelman was formerly in the employ of said West Company; that "while in such employ and since the termination thereof she has conspired with, aided and abetted said Harold I. Koppelman in the promotion and development of his schemes and doings in said bill and this petition complained of, and has herself actively par- ticipated in the commission of the wrongs and griev- ances herein complained of"; that said Arthur C. Tretow was for a long period of time also in the em- ploy of the West Company and that during such em- ployment and since its termination he "has likewise conspired with, aided and abetted the said Harold I. Koppelman in the promotion and development of his said schemes," and "has himself actively participated in the commission of the wrongs and grievances herein complained of"; that Jacob L. Brenn was for a long period of time also in the employ of the West Com- pany, and that during such employment and since the termination thereof "has likewise conspired with, aided and abetted the said Harold I. Koppelman in the promotion and development of his said schemes" and actively participated in said wrongs and griev- ances; that said Harold I. Koppelman for several years prior to his said discharge by the West Company "caused copies to be made from time to time of all orders received by your petitioner at its said Chicago branch," and "that said copies included the name of the customer, the address of the customer, the items purchased or involved, the price charged and the date of the receipt of the order"; that he, "for his individ- ual and private purposes, and in violation of the rights of your petitioner, made, or caused or procured to be made, directly or indirectly, from the private business

records of your petitioner, systematic and comprehensive lists or memoranda of the customers of your petitioner, together with their addresses and records of the date, quantity and character of their purchases''; that the ''record of said information is at the present time noted upon a series of classified cards'' which he ''caused to be placed in the factory or business premises of the said Koppelman Corporation''; that he, the said corporation, and said persons associated with him, are ''using and employing the information contained upon said cards in the development and prosecution of the business of said corporation, to the injury of the good-will and custom of the business of your petitioner''; that he, the said corporation, and said persons, ''have been and are now jointly co-operating in procuring transcripts to be made of the information contained upon the said cards, classified according to territory''; that they ''have distributed, and are designing further to distribute, said transcripts among and for the use of the salesmen employed by said corporation''; that said acts and doings are in direct violation of clause (c) of said injunction; that in the proceedings before the chancellor, wherein Harold I. Koppelman had moved for a dissolution of said injunction, he had denied under oath that any lists or memoranda of trade information, or copies thereof, of the West Company were in his possession or under his control; and that unless the lists, cards and records then being used by the Koppelman Corporation were sequestered, Koppelman would continue to deny the existence of the same and would resort to tricks and subterfuges to conceal their whereabouts, and thereby the injunctional order of the court would be further violated and the rights of the company wholly defeated. The petition was supported by affidavits. The court ordered that a writ of sequestration issue and that the respondents named in the petition (including Harold I. Koppelman, Lillian Koppelman,

Brenn, Tretow and the Koppelman Corporation) show cause, etc. The rule to show cause was duly served, and the sheriff, on August 8, 1918, executed the writ of sequestration at the place of business of the Koppelman Corporation in Chicago by seizing and impounding two sectional cabinet cases containing cards and bearing the names of persons and firms and the amount and nature of their purchases, also one miscellaneous lot of such cards, and one letter file containing similar lists of customers. There were about 18,000 of these cards.

Each of the five respondents filed a verified answer to the petition. Attached to the answer of Harold I. Koppelman and made a part thereof were the affidavits of Brenn and others. In the Brenn affidavit is set forth, as he and the other respondents claim, the manner in which the trade information belonging to the West Company was procured and turned over to the Koppelman Corporation. Brenn states in his affidavit that *after* Koppelman had been discharged on October 3, 1917, and fearing that he would subsequently also be discharged, he "formed the purpose" to engage in a similar business to that of the West Company on his own account; that thereupon "the idea occurred to him of making copies of the names and addresses and other information pertaining to the customers of said West Company, with the idea they might be of use to him in case he did start in business"; that shortly thereafter, "following a discussion of the matter between affiant, Arthur C. Tretow and Mr. Harry Rubel," there were moved into the office occupied by him cases and cabinets containing the copies of records of sales to customers and he had full access thereto; that during the intervening period, until affiant's discharge (about November 3, 1917) "affiant, at convenient opportunities, from memory made memoranda of names and addresses and also copied names, addresses and information from said

records and took the same home with him evenings";
that he also took from said cabinets numbers of cards
or copies of records of sales; that he purchased at
various stationery stores and took home cards suitable
for the purpose and "on such cards from time to time
affiant and his wife, brother-in-law and sister-in-law
copied the information so carried home, and that
thereafter he returned to the files of said West Com-
pany all such cards or copies of records which he had
taken"; that in this manner he "accumulated a con-
siderable number (several thousand) of cards on which
he, or his said wife, brother-in-law or sister-in-law, had
transcribed the names and addresses of parties buying
and using the classes of goods dealt in by the West
Company, together with the dates when goods had
been sold to them, the kind and quantities of goods
and the prices"; that all of said cards "were copied
and prepared subsequently to said October 3, 1917";
that none of the memoranda was acquired or removed
from the office prior to several days after October 3,
1917; that shortly after his discharge from the com-
pany he started in business for himself at No. 20 East
Jackson Boulevard; that owing to lack of sufficient
capital he became discouraged and "about the end of
December, 1917, Harold I. Koppelman offered affiant
a position in connection with the business which Kop-
pelman said he was then contemplating establishing";
that "so far as he is aware" Koppelman had no knowl-
edge of the fact that affiant had prepared the cards
mentioned until some time near the end of February,
1918, at which time affiant stated to Koppelman that
he had said cards and offered to let Koppelman have
them, and thereupon brought to the office of said Kop-
pelman all of the cards so made by him, with the ex-
ception of a few, and delivered them to said Koppel-
man; and that "he has not at any time after entering
the employ of said Koppelman or said U. S. Sanitary

Products Corporation made any use whatever of said cards.''

The answer of Tretow contained general denials of the material allegations of the petition. His affidavit attached to the answer of Koppelman was made a part of his answer. In that affidavit he stated that he had been the secretary of the Koppelman Corporation since the date of its final incorporation; that prior to that time and from about January 2, 1918, he was employed by Koppelman in a similar business; that some time in the latter part of February, 1918, there was delivered at the office by an expressman a wooden packing box; that affiant was informed that said box contained a number of cards which had been made by Brenn and which he was turning over to the Koppelman Corporation; that Brenn stated that said cards were lists of the names and addresses of purchasers of the kind of goods that said corporation was engaged in selling; that more than two months thereafter affiant purchased a cabinet intended to contain said cards, which cabinet was placed in a storeroom; that prior to the receipt at the office of said box of cards there was not on the premises of the Koppelman Corporation, nor in the custody or use of any persons associated with the business of the said corporation, to affiant's knowledge, any similar cards or lists. The answer of Lillian Koppelman also contained general denials of the material allegations of the petition. Her affidavit attached to the answer of Koppelman was made a part of her answer. In this affidavit she stated that she had been vice president of the Koppelman Corporation since its incorporation in the latter part of February, 1918; that prior to that time and subsequent to January 2, 1918, she was employed by her brother in and about a similar business then conducted by him; that as vice president she handled all the correspondence and records of the company, and received and checked up the reports of the salesmen; that about

the latter part of February, 1918, she was told by her brother that Brenn was going to turn over certain cards to the corporation; that shortly thereafter a wooden box containing said cards was delivered, which box and contents were placed in a storeroom and there remained for about 2 months, when the cards were taken out of the box and put in a cabinet; that these cards are the identical cards which were taken by the sheriff under the writ of sequestration; that prior to the delivery of said box there were never on the premises of the corporation any cards or lists bearing the names and addresses of customers of the West Company; that after said cards had been put in the cabinet on one occasion a stenographer was instructed to prepare from said cards for a salesman a list of towns and customers in the State of Iowa, and on another occasion a list of customers in certain towns in North Dakota; and that subsequently a stenographer was instructed to address circular letters to a number of customers whose names appeared on said cards, which was done.    In Brenn's answer to the petition his affidavit above referred to was made a part of his answer.    The Koppelman Corporation in its answer adopted the answer of Harold I. Koppelman, together with the affidavits thereto attached.

There was a lengthy hearing before the chancellor. The transcript containing the oral and documentary evidence then introduced is very voluminous.    On behalf of the company nine witnesses were called, including Jacob L. Brenn.    Tretow was called as a witness by the chancellor.    On behalf of the respondents, Brenn and Harold I. Koppelman testified.    Lillian Koppelman did not testify.    All of the sequestered cards and lists were in the court room throughout the hearing. The evidence, oral and documentary, tended to show that Harold I. Koppelman, Brenn and Tretow, while employees of the West Company, were together engaged in a plan to start a competitive business and to

assist in the building up of that business by the use of trade information obtained from the records of the West Company, and that they subsequently carried out this plan, in which Lillian Koppelman joined, by organizing the Koppelman Corporation and using said trade information in unfair competition with their former employer; that this information was originally secured by Harold I. Koppelman, while he was acting as manager of the Chicago branch of the West Company; that he caused to be made up daily lists of customers, which showed the shipments to them, the date of shipment, the articles and quantities purchased and the price; that the cards which were sequestered contained substantially the same information; and that, while Brenn claimed the information contained on said cards had been copied from other records and papers of the West Company (after October 3, 1917, and before his discharge from the West Company), the real source of most of the information contained on said cards was the daily lists so caused to be made up by Koppelman prior to his discharge from the West Company on October 3, 1917.

In the order of August 28, 1918, the court found *inter alia* that the allegations of the West Company's petition, "in so far as they relate to obtaining and using trade lists and trade information and lists of customers and other data" in respect to the business of the West Company by said five respondents, "are fully proved and true, and that the verified answers of said respondents are, and each of them is, untrue, and each of said answers, at the time it was made, was known to the respective respondent to be untrue"; that said respondents, Harold I. Koppelman, Lillian Koppelman, Brenn and Tretow, prior to October 3, 1917, and while employed by said West Company, "conspired and confederated with each other to enter into a business competing with that of said West Disinfecting Company, and, in furtherance of said scheme,

further conspired and confederated with each other dishonestly and unfairly to acquire, and make wrongful use of, names of customers, trade lists and other trade information" relating to the business of said West Company; that after the issuance of said injunction and the service thereof upon Harold I. Koppelman, Lillian Koppelman and Brenn, and after knowledge of its issuance and contents had been acquired by said Tretow and said Koppelman Corporation, each and all of said five respondents, "then well knowing the terms of said injunction and in further pursuance of their said conspiracy and in contumacious disregard of said injunction, did severally violate the terms of said injunction, in that said respondents, and each of them, used, in a business other than, and competitive with, the business of said West Disinfecting Company, trade lists and trade information and lists of customers and data and memoranda and other writings," in respect to the business of said West Company, "prepared, compiled, assembled and acquired during the period between January 1, 1913, and October 3, 1917, and gave access thereto to each other, to the agents and servants of said U. S. Sanitary Products Corporation and to divers other persons"; and that "all of said cards and lists so sequestered by the sheriff as aforesaid were made by some one or more of said respondents, Harold I. Koppelman, Lillian Koppelman, Jacob L. Brenn, and Arthur C. Tretow, by copying the same from trade lists, trade information, lists of customers and data in respect to the business of complainant, prepared, compiled, assembled and acquired during the period between January 1, 1913, and October 3, 1917, and that each of said last-named respondents knew at the time thereof of the making of some or all of said cards and of the source thereof." And the court adjudged that each and all of said five respondents "knowingly, wilfully and flagrantly" have

violated said injunction and are in contempt of said court, and further ordered and adjudged that said respondents severally be punished, as first above mentioned.

At the hearing, during the closing arguments of counsel, the chancellor said in substance that the evidence showed that Brenn and Tretow, while they were still employees of the West Company, made several visits to the office of Koppelman after his discharge from said company, and that this fact should be viewed in the light of their earlier conduct, their subsequent actions after they had associated themselves with Koppelman in his new business venture, and many other facts and circumstances in evidence, in determining the ultimate fact of whether or not they had conspired with Koppelman to acquire and wrongfully use the trade information and lists of customers of the West Company. In deciding the case the chancellor said, among other things, that "the court is satisfied that Harold Koppelman, Jacob Brenn, Arthur C. Tretow, and, in a technical way, the United States Sanitary Products Corporation, were engaged in the scheme that the complainants complain of in this case"; that "I am further satisfied that the so-called records,—that the work of stealing those things commenced before October 3, 1917"; that "when the writ of sequestration found these goods in the possession of these respondents they were, of course, very much narrowed in any possible defense that they might make, and they have been forced by circumstances to the defense that they have made"; that Jacob L. Brenn "is a subordinate and a tool * * * and he sat here for days in the most shameless manner attempting to evade and explain contradictions"; that Arthur C. Tretow "has subordinated himself, in a measure, to Koppelman, and he must take some punishment. He showed * * * a great embarrassment at times on the stand"; that "Lillian Koppelman may not have

been a party to the original proceedings but she joined in it, and with full knowledge of the extent of the conspiracy she afterwards took part in using these records, and in violating the injunction of the court''; and that the Koppelman Corporation ''is, of course, technically guilty.''

WEST & ECKHART, for plaintiff in error.

ROSENTHAL, HAMILL & WORMSER, for defendant in error; CHARLES H. HAMILL and LEO F. WORMSER, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

It is the law of this State that a proceeding for contempt for violating an injunction is a civil or remedial proceeding, and that ''the case is, from its inception to its conclusion, in all of its procedure, essentially a civil chancery proceeding, conforming itself, in its pleadings, character and quantity of proof required, and in its course through the Appellate tribunals, to the rules and practice applicable to other chancery proceedings.'' (*Hake v. People*, 230 Ill. 174, 193.) ''A proceeding for contempt in violating an injunction is for the purpose of advancing the remedy of the complainant and is remedial and civil in its nature. In such a case the defendant is not entitled to purge himself of the contempt by a sworn answer and be discharged, but his answer may be contradicted and disproved. There is no rule of law which requires proof beyond a reasonable doubt in a civil case. Civil rights, only, being involved, the violation of the injunction may be established by a preponderance of the evidence.'' (*People v. Buconich*, 277 Ill. 290, 294.) And in a chancery proceeding it is the settled rule that where the chancellor hears the witnesses testify in open court his findings of fact, when the testimony is conflicting, are entitled to great weight and will not be disturbed on appeal unless manifestly against the evidence. (*Burgett v. Osborne*, 172 Ill. 227, 238; *Bouton v. Cam-*

*eron,* 205 Ill. 50, 69; *Kirby v. Judy,* 286 Ill. 200, 205; *St. Louis, B. & S. Ry. Co. v. Gray,* 100 Ill. App. 538, 541.) "The reason stated for the rule in decided cases is, that the presiding judge of the trial court, who sees the witnesses, hears their testimony and observes their demeanor while testifying, is, other things being equal, better qualified to pass on the question of their credibility than is a court of review from the mere reading of their testimony." (*Bouton v. Cameron,* 99 Ill. App. 600, 619.) We cannot say that the findings of fact of the chancellor in the present case, contained in the order of August 28, 1918, are manifestly against the evidence, as here contended by counsel for plaintiffs in error. Indeed, we think that in view of all the facts and circumstances in evidence the chancellor was fully justified in his findings and in adjudging that all five of the respondents knowingly and wilfully violated the injunction and were in contempt of court, and in inflicting punishment severally upon them.

It is also contended by counsel for plaintiffs in error that there is a variance between the averments of complainant's petition for the rule to show cause and writ of sequestration, and the proofs and the order adjudging the respondents guilty of contempt. We do not think that there is any material variance.

Counsel state in their brief that it is the law that (a) to authorize punishment for a violation of an injunction, the act complained of must be clearly embraced within the restraining clause of the injunction, and (b) the language of the injunction should not be extended to cover acts not within its meaning. Counsel further state: "It is conceded that if the cards and lists hereinbefore mentioned, which were found by the sheriff in the offices of the U. S. Sanitary Products Corporation, were 'prepared, compiled or assembled or acquired in any wise' prior to October 3, 1917, then the use of them constituted a violation of said injunction. The defense was that none of said material was

'prepared, compiled or assembled or acquired in any wise' prior to October 3, 1917. However indefensible from an ethical standpoint the conduct of plaintiffs in error in acquiring and using the cards and lists in question may have been, as a matter of fact the cards were not 'prepared, compiled or assembled or acquired in any wise' prior to October 3, 1917," *by any of the plaintiffs in error.* The argument is that "the *use* of the information, assembled and compiled by Brenn *subsequent* to October 3, 1917, reprehensible as it may have been, not having been restrained by the injunction, was not a violation thereof."

Clause (c) of the injunction restrained the respondents from: "Using or giving any person, firm, corporation or association, other than the West Disinfecting Company, access to any trade lists or trade information or lists of customers, or data or memoranda or other writings in respect to the business of the West Disinfecting Company, prepared, compiled or assembled or acquired in any wise during the period between January 1, 1913, and October 3, 1917." We think that the plain meaning of the injunction is that the respondents should not use, or give to any person or corporation other than the West Company, any trade information in respect to the business of the West Company, no matter by whom prepared or compiled, or however acquired by the West Company, during said period. Even on the assumption that Brenn did not copy any of this trade information until after October 3, 1917, and that no use of it was made by the respondents until after that date, the use thereafter was a violation of the injunction for the evidence shows that it was trade information acquired by the West Company prior to said date. The evidence further shows that Koppelman was discharged on October 3, 1917, and that his previous conduct had given the West Company reason to fear that he and others would

use trade lists and trade information respecting its business that had previously been acquired, and the West Company sought to be protected against such misuse by praying for the injunction in question, which it obtained. In 2 High on Injunctions (4th Ed.), sec. 1446, it is said: "In deciding whether there has been an actual breach of an injunction it is important to observe the objects for which the relief was granted, as well as the circumstances attending it. And it is to be observed that the violation of the spirit of an injunction, even though its strict letter may not have been disregarded, is a breach of the mandate of the court." (See also, *Loven v. People,* 158 Ill. 159, 168; *Board of Trade v. Tucker,* 221 Fed. 300, 302, affirmed 137 C. C. A. 255, 221 Fed. 305; *Town of Drummer v. Cox,* 165 Ill. 648, 652; *St. Louis, B. & S. Ry. Co. v. Gray,* 100 Ill. App. 538, 541.)

For the reasons indicated the order and judgment of the circuit court will be affirmed.

*Affirmed.*