**John M. Pfeiffenberger, Appellee, v. Illinois Terminal Railroad Company, Appellant.**

**Term No. 46M7.**

Opinion filed October 4, 1946. Released for publication November 12, 1946.

VERLIE, EASTMAN & SCHLAFLY and EMERSON BAETZ, all of Alton, for appellant.

I. H. STREEPER, of Alton, for appellee; RALPH T. SMITH of Alton, of counsel.

MR. JUSTICE BARTLEY delivered the opinion of the court.

The question for consideration by the court is the correctness of the order of the city court of Alton adjudging the defendant guilty of contempt of court in violating an injunction issued by that court in favor of the plaintiff and fining the defendant therefor $200.

The proceedings in which the injunction was issued was initiated by a complaint filed by the plaintiff September 4, 1940. An answer was filed September 26, 1940, denying the material allegations of the complaint. On the same day the parties entered into a stipulation consenting to the entry of an agreed decree, which provides as follows:

"That a writ of injunction issue herein, directed to the defendant, Illinois Terminal Railroad Company,

a corporation, its attorneys, solicitors, officers, agents and servants, permanently restraining and enjoining them, and each and every one of them, from using the certain buildings and premises known as a coal loading dock located on the Mississippi River at or near the foot of Bluff Street, in the City of Alton, Madison County, Illinois, in such manner as to cause dust from coal, coke and fuel to arise therefrom and to be thrown into the air so that said dust is carried from said buildings and premises, and railroad cars, by the air currents or wind, into, over, upon and about the premises or property of the plaintiff located on Bluff Street, in the City of Alton, Madison County, Illinois, in such amounts as to materially interfere with plaintiff's use and enjoyment of his property, including his home and residence, and from causing, between the hours of ten o'clock p. m. and six o'clock a. m., loud noises to arise from the beating upon and switching of railroad cars by workmen, employees, or servants of the defendant, at the premises aforesaid, or permitting the said premises so to be used.''

The order of the court appealed from was entered December 13, 1945, upon issues made on the petition of the plaintiff alleging that the defendant had violated the injunction by causing between the hours of 10:00 o'clock p. m. and 6:00 o'clock a. m. loud noises to arise from the beating upon and switching of railroad cars by employees, and also by permitting dust to arise from the loading and unloading of coal from coal cars to and from the loading dock of the defendant in such amounts as to materially interfere with plaintiff's use and enjoyment of his property. The order found the issues in favor of the plaintiff in that the defendant railroad company on or about October 20, 1945, permitted dust to arise from the loading and unloading of coal from coal cars to and from the loading dock of the defendant at the foot of Bluff Street in the City of Alton, Illinois, in such amounts

as to materially interfere with plaintiff's use and enjoyment of his property contrary to the injunction issued in the case against the defendant, adjudged the defendant in contempt of court and assessed a fine of $200 with costs against the defendant. It will be noted that the court entered no finding or order relative to the alleged violation of the injunction because of noises. Neither side makes any complaint as to this, and therefore no further attention will be given by this court to this feature in the cause.

The evidence shows that plaintiff, on October 20, 1945, at about 5:20 p. m., noticed a large cloud of coal dust being blown toward his home by a northwest wind from the loading dock of the defendant, whereupon he called the police and later about 5:45 or 6:00 o'clock, called the supervisor of the loading dock, complaining as to the dust, whereupon, after 15 or 20 minutes, the dust ceased, the defendant having shut down its operations in the unloading and loading of coal. The evidence further shows that for a period of about an hour from 5:20 o'clock in the afternoon on the day in question until about 6:20 o'clock, that what is described as large clouds of coal dust and as a "dust pall," was carried by the wind from the dock of the defendant over the home of the plaintiff, and that it entered every room in his house. In describing the quantity of the dust, plaintiff testified that when the dust arose on the day in question, he was in his bathroom to take a bath and that he could not get into the tub on account of the dust until it had been washed out, and that the dust sifted through his home; that it was everywhere and in every room in his house.

Another witness on behalf of the plaintiff, his brother who lives across the street from him, testified that he saw what he described as this "dust pall" come over his premises and the premises of the plaintiff about 5:20 to 5:45 p. m. and that on the day following the day in question, he could see where it had

been deposited on the wall and the porch and the furniture on his porch. This witness testified that the dust was "bug dust" which is described as very fine coal dust and as being the same thing as sawdust to lumber.

The plaintiff resides on Bluff street in Alton at the top of a bluff. At the foot of the street, about 325 yards from the home of the plaintiff, the defendant operates buildings and premises known as a coal loading dock located on the Mississippi River. The dock is operated for the trans-shipment of coal from railroad cars to barges for movement on the Mississippi River. The coal is brought in on cars by engines of the defendant. A pit track is maintained under which are three hoppers. From the hoppers a conveyor runs to a tipple over the barges. Coal is brought down over the hoppers in gondola cars, dumped, and the conveyor picks it up from the hopper, carries it to and dumps it on a barge. On the day in question, a train of 20 cars was brought into the unloading dock, consisting of 13 cars of coal size 3 x 2, and 7 cars of coal size 2 x 1½. According to the evidence of the defendant, these cars and the manifest accompanying the same, indicated that the coal had been dedusted. According to the evidence of the defendant, such coal will not create dust in any appreciable amount, but that it will unless dedusted or treated. While this statement is not intended to be conclusive of all the things that occasioned the original complaint, it appears from the record that the dust complained about came from "bug dust," and from coal that had not been dedusted.

Subsequent to the issuance of the injunction, according to the evidence of the defendant, it ceased to handle bug dust and filed a tariff providing "coal from which the dust has not been removed by screening, washing or proper oil or chemical treatment to eliminate flying dust, will not be accepted for unloading

through the conveyor." According to the testimony of the supervisor of the defendant, whether coal has been dedusted cannot be ascertained from observation while in a car, and that it was not until after the first car or two of coal brought in on the day in question had been unloaded into the hoppers, that he observed that the coal had not been dedusted. This witness also says that he saw dust arising, but that he continued to unload the coal because the wind was not blowing in such a direction that the dust was blown up over the bluff on which plaintiff's home was located, until he had unloaded 13 cars of the 20-car train; that after the plaintiff called, he discontinued operations until the next day when he finished unloading what was in the hoppers, and then returned to the consignor the remaining seven cars.

In determining whether there has been a breach or violation of an injunction, the decree or order for the injunction is to be construed with reference to the nature of the proceeding and the purpose of the injunction as shown by the pleadings and the relief prayed for. 43 C. J. S. page 1016.

The complaint here on which the injunction was issued, insofar as it relates to the dust, alleged that the defendant maintained a nuisance in that the premises of the defendant were being used to unload coal, coke and fuel from open railroad cars and to transfer the same in open railroad cars by means of a conveyor to barges located on the Mississippi River and thereby causing large amounts of coal, coke and fuel dust to arise from such coal, coke and fuel being so unloaded, and to fill the air with dust from said coal, coke and fuel; that said dust was carried by air currents or wind into, over, upon and about the premises of the plaintiff; that by reason thereof, the health and comfort of the plaintiff and his family was interfered with and he and his family were deprived of the comfort and enjoyment of their home. The prayer for relief,

insofar as related to the dust, was that the defendant be enjoined from using its premises in such a manner as to cause dust from coal, coke and other fuel in any amount to arise therefrom and to fill the air with said dust so that the same could be carried by the air currents or wind into, over, upon and about the premises of the plaintiff.

The decree of the court, which was the language of the parties themselves and entered by consent as hereinbefore set out, restrained and enjoined the defendant, its agents and servants from using the buildings and premises of the defendant in such a manner as to cause dust from coal, coke and fuel to arise therefrom and to be thrown into the air so that said dust is carried from said buildings and premises, and railroad cars, by air currents or wind, into, over, upon and about the premises or property of the plaintiff in such amounts as to materially interfere with plaintiff's use and enjoyment of his property or permitting the said premises of the defendant to be so used.

It is apparent, therefore, that the purpose of the injunction insofar as related to the issue here, was to prevent what was conceded to be a nuisance by inhibiting the defendant from carrying on its operations at its coal loading dock in such a manner as to cause the dust complained about to be thrown into the air so that the same was carried by air currents or wind into, over, upon and about the premises of the plaintiff in such amounts as to materially interfere with plaintiff's use and enjoyment of his property, including his home and residence.

It follows, therefore, that the correctness of the decision of the trial court is to be determined by consideration of whether the dust complained about was in such amounts as to materially interfere with plaintiff's use and enjoyment of his property.

The chancellor has here found as a fact that the acts of defendant in the operations of its plant

permitted dust to arise from the loading and unloading of coal from the coal cars to and from its loading dock in such amounts as to materially interfere with plaintiff's use and enjoyment of his property contrary to the injunction issued. This is a finding of an ultimate fact which this court will not interfere with unless it can say that it is contrary to the manifest weight of the evidence. What is meant by the adverb "materially" is well known, varying at times in the sense used, or its connection with, or its combination with other words. According to the evidence, by reason of the operations of the defendant, large clouds of coal dust arose, were carried by the air currents or wind so that the dust sifted through every room in the house of plaintiff for a period of about an hour. To condone the acts of the defendant here because it is said that the dust clouds blew over for only an hour, would render ineffectual the practical enforcement of the decree of the court, for if the defendant could do this for an hour on one day without violating the injunction, then how many hours or how many days could this be done without so violating the inhibition of the injunction. The excuse attempted to be made by the defendant, that, for whatever merit there is in it, the cars of coal were mistakenly marked as having been dedusted and that the freight manifest mistakenly showed the cars of coal to have been dedusted, loses any force because the defendant admittedly, after it had unloaded a car or two, when it was discovered by its supervisor that dust was arising and that the coal had not been dedusted, continued to unload 12 or 13 other car loads. The further excuse made by the supervisor that he did this because the wind was blowing in a direction away from the home of the plaintiff, shows that he deliberately decided to take a chance, for he either knew, or should have known, as a matter of common knowledge, that the air currents or wind can change at any moment, and according to the record, the wind did

change and the clouds of dust were carried into the home of the plaintiff for about an hour as hereinbefore stated, and the operations did not cease until the complaint of the plaintiff.

██ The defendant argues that although the conduct of the defendant complained of, is literally a breach of an injunction, it is not so in spirit, and that when a defendant has acted in good faith and there is no evidence of any intention on the defendant's part to violate a writ, he should not be held guilty of a contempt of court, and cites such cases as *Hughson v. People,* 91 Ill. App. 396, and *Kahlbon v. People,* 101 Ill. App. 567. The violation of the spirit of an injunction even though its strict letter may not have been disregarded, is a breach of the commandment of the court. *West Disinfecting Co. v. Koppelman,* 216 Ill. App. 438. As we view the record here, the defendant, through its agents and servants, violated both the spirit and the letter of the injunction.

██ The defendant also assigns as error, the action of the court in excluding evidence as to the loss in revenue to the defendant by reason of its alleged ceasing to handle bug dust because of the injunction. We cannot see where this would throw any light on the issues before the court or where, if admitted, it could in any way change the conclusion reached by the trial court or by this court.

██ We find no error in the record and the order and judgment of the city court of Alton is affirmed.

*Order and judgment affirmed.*

CULBERTSON, P. J., and STONE, J., concur.