SAMUEL L. DOLNICK *et al.*, Plaintiffs-Appellees, *v.* GENERAL SUPER-INTENDENT OF SCHOOLS OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (4th Division)  Nos. 77-896, 77-1018 cons.

Opinion filed November 9, 1978.—Modified on denial of rehearing January 18, 1979.

Michael J. Murray, of Chicago (Richard E. Girard, Robert J. Krajcir, and Patrick D. Halligan, of counsel), for appellants.

Ronald S. Cope, of Ancel, Glink, Diamond & Murphy, P. C., of Chicago, for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendants, the general superintendent of schools of the City of Chicago, certain of his assistants, the Board of Education of the City of Chicago and the Board members individually, appeal from an order of the circuit court of Cook County which found them guilty of contempt and imposed fines for violation of a permanent injunction order entered on July 13, 1976. The order in question restrained defendants from employing any person to serve as or perform the duties of acting

principal, if that person does not hold a principal's (supervisory) certificate issued by the Board of Education of the City of Chicago.

We reverse the judgment of the trial court finding defendants guilty of contempt.

The dispositive issue on appeal is whether the defendants' policy of appointing one principal to supervise the operation of more than one school or branch school violates the injunction order.

On January 10, 1975, the head of the Chicago Principals' Association and 12 other individuals filed an action as taxpayers against the general superintendent of schools and the Board of Education and its members individually seeking to enjoin defendants' practice of appointing individuals without supervisory certificates[1] to the positions of assistant principal and acting principal in alleged violation of certain provisions of the School Code of Illinois. Ill. Rev. Stat. 1975, ch. 122, pars. 21—1 and 34—8.1.

Section 21—1 in part provides "[n]o one may teach or supervise in the public schools nor receive for teaching or supervising any part of any public school fund, who does not hold a certificate of qualification * * *." With special reference to the position of principal, section 34—8.1 states "[e]ach principal shall hold a valid supervisory or administrative certificate * * *."

The complaint charged that both assistant principals and acting principals supervise attendance centers within the meaning of the School Code. As defined by the pleadings, persons in the position of assistant principal take charge of their respective schools when their principal is absent from the building for any reason. Acting principals are persons serving in the position of principal and performing supervisory duties of principal in schools in which there is a vacancy in the position of principal.

The complaint sought to enjoin defendants from employing anyone to supervise the operation of any school who does not hold a valid supervisory certificate and from paying public school funds to any person acting in a supervisory capacity who does not hold such a certificate.

Following a hearing on the parties' cross motions for summary judgment, the trial court entered an injunction order on July 13, 1976, permanently enjoining defendants "from employing any person and paying any person out of the Public School Fund for serving in the

---

[1] The Board of Education of the City of Chicago issues teacher's certificates and principal's certificates as required by the School Code. The principal's certificate is a supervisory certificate within the meaning of the School Code. (Ill. Rev. Stat. 1975, ch. 122, par. 34—8.1.) No question is raised in these proceedings concerning teacher's certificates and when we refer to an individual as uncertified we mean not possessing a supervisory certificate.

position of Acting Principal, or for performing the services of an Acting Principal, although given a different title, who does not hold a properly issued principal's [supervisory] certificate issued by the Board of Education of the City of Chicago."

The order recited:

"That Acting Principals perform supervisory duties and serve as the supervisory head of a school where a vacancy exists in the position of Principal or where the Principal is absent from the school for a long period of time due to extended illness, leave of absence or like cause (meaning any period in excess of ten (10) school days.) That said Acting Principals are performing the duties of a principal. That Section 34—8.1 of the School Code of Illinois, Ill. Rev. Stat., 1975, Ch. 122, §34—8.1 provides, in part, 'Each principal shall hold a valid supervisory or administrative certificate issued by the Board of Education.' That the Board of Education issues a 'Principal's Certificate' which is a supervisory certificate within the meaning of the aforesaid statute.

That Section 21—1 of the School Code of Illinois, Ill. Rev. Stat., 1975, Ch. 122, §21—1, prohibits anyone from supervising in the public schools or receiving any part of any public school fund who does not hold a certificate of qualification. Under this statute, persons performing supervisory duties must hold a supervisory certificate in order to supervise in the public schools or receive any part of any public school fund, except as hereinafter provided."

With regard to the position of assistant principal the order stated:

"[T]he Board of Education requires Assistant Principals to meet certain educational standards and qualifications before being appointed to the position of Assistant Principal. That the imposition of these requirements as a condition for appointment plus the requirement that the Assistant Principal hold a teacher's certificate, plus the requirement that the Assistant Principal not supervise for a period in excess of ten (10) school days, is enough to satisfy the requirement of Section 21—1 of the School Code as to Assistant Principals only, even though said Assistant Principals are not actually issued a supervisory certificate."

Accordingly, on the issue of the employment of uncertified assistant principals, the trial court granted summary judgment in favor of the defendants. The enforcement of the injunction order prohibiting the hiring of uncertified acting principals was delayed 30 days from the entry of judgment to allow defendants to comply. No appeal has been taken from that order.

On September 7, 1976, plaintiffs filed a petition in the circuit court of Cook County requesting the court to issue a rule to show cause why defendants should not be held in contempt of court for willful failure to

comply with the trial court's injunction order. The petition for rule to show cause was amended on November 3, 1976. As amended the petition alleged that defendants, including members of the general superintendent's staff, had knowingly and willfully failed to carry out the terms of the injunction order because they allowed expenditures of public school funds to be made to persons, some referred to as head teachers, who did not hold supervisory certificates but were allegedly employed to perform supervisory duties in the Chicago public schools.

Specifically, the petition stated that defendants "have * * * been naming persons who hold supervisory certificates and who maintain the title of principal, as the principal of two schools"; that although these principals have been serving as the principal of one school, defendants "have named this individual as the principal of an additional school sometimes referred to as a 'branch' school"; and that defendants have attempted to avoid the terms of the injunction order "[b]y naming a person with a supervisory certificate the principal of two schools." The petition listed eight specific schools "where persons other than certified principals were acting in the capacity of principal and supervising attendance centers."

Defendants filed a response to the petition for rule to show cause denying that uncertified persons had been paid for performing supervisory duties. Defendants answered that the position of head teacher had been established to provide supportive administrative help to the principals in branch units with seven or less teachers; that the position had been in existence since before 1947; and that no head teacher had been appointed since the entry of the injunction order. The response described the defendants' policy of establishing branch schools by combining schools under the jurisdiction of one principal where one of the schools has a staff of less than 15 full-time teachers and included as an exhibit a copy of a Board report explaining this policy.[2] Further, the response stated that to fill the vacancies created by the injunction order, the Board had initiated a procedure to appoint interim principals (persons holding supervisory certificates and already serving as principal of at least one school) as the temporary heads of certain additional schools. An exhibit was attached naming 35 schools in which interim principals had been appointed; 33 of these interim principals had been appointed since the issuance of the injunction order. Included in the list of schools to which an interim principal had been appointed were seven of the eight schools specifically listed by plaintiffs. Defendants stated that a recommendation was being prepared concerning the eighth school.

---

[2] Attached to defendants' response to the petition for rule to show cause was an affidavit signed by three of the Board's administrative officials representing that plaintiff, Dolnick, had favorably discussed the branch school policy with the affiants on several occasions prior to the issuance of the injunction order.

12

In their reply to the answer to the amended petition for rule to show cause plaintiffs again listed instances where either a branch school had been created or a certified principal had been assigned to more than one school since the issuance of the injunction order and alleged that in each case the real person supervising the day-to-day operation of the school was an uncertified assistant principal or head teacher.

On February 3, 1977, the trial court issued a rule to show cause returnable on February 22, 1977. Defendants answered and hearings were commenced on May 24, 1977. Plaintiffs presented the testimony of several individuals who were then serving as principals of more than one school either as part of defendants' branch school program or as interim principals. The parties entered into a stipulation listing relevant schools, their supervisory personnel and the type of certification held by those persons. Several administrative assistants testified for defendants stating generally that no uncertified acting principals had been appointed by the Board since the injunction had been entered and that the term "acting principal" was not in custom and usage interchangeable with the terms "head teacher" and "assistant principal."

At the conclusion of the bench trial the trial judge, who had not presided at the injunction proceedings, stated that he found defendants' policy of appointing one certified individual to serve as principal of more than one school in violation of the injunction order. Referring to the head teachers and assistant principals serving under these dually appointed principals, the court stated:

"And I find that these people who are supervising in the schools * * * are * * * serving in the position or performing the services of an acting principal, although given a different title, and therefore, they should hold principal's certificates issued by the Board of Education of the City of Chicago."

A final order was entered holding defendants in willful violation of the injunction order and giving defendants 14 days to comply with the injunction order or be fined $100 a day thereafter until achieving compliance.

Defendants filed a notice of appeal from the final order and this court stayed enforcement of the $100 a day fine pending the disposition of this appeal.

OPINION

Defendants contend that the policy of appointing one properly certified individual as principal of more than one school or branch school, was not proscribed by the injunction order entered on July 13, 1976. Plaintiffs argue that where one individual is assigned to perform the duties of principal at more than one school or branch school, the uncertified

assistant principals and head teachers who supervise those schools in the principal's absence are, in fact, acting principals within the scope of the injunction order.

## I.

■■■ In determining whether there has been a breach or violation of an injunction, the decree or order for the injunction must be construed with reference to the nature of the proceedings and the purpose of the injunction as shown by the pleadings and the relief requested. (*Pfeiffenberger v. Illinois Terminal R.R. Co.* (1946), 329 Ill. App. 476, 69 N.E.2d 355.) "Whether or not particular acts constitute a violation depends largely on the special provisions of the injunction, and the language of the decree or order should not be extended to cover acts not fairly and reasonably within its meaning." (43A C.J.S. *Injunctions* §289 (1978).) The court will not strain to give the injunction order a wider scope than is justified by the relief sought and the issues raised in the trial court. *Leitch v. New York Central R.R. Co.* (1944), 388 Ill. 236, 58 N.E.2d 16.

The original complaint challenged the defendants' policy of placing uncertified assistant principals or acting principals in charge of a school when either the person who had been assigned as principal was absent on leave or a true vacancy existed in the position of principal.

The injunction order which was entered distinguished between the two specific positions of acting principal and assistant principal. With regard to acting principals the order recited that persons in this position "serve as the supervisory head of a school where a vacancy exists in the position of Principal or where the Principal is absent from the school for a long period of time due to extended illness, leave of absence or like cause (meaning any period in excess of ten (10) school days)." The court found that such persons perform supervisory duties within the meaning of the School Code and are required by statute to hold supervisory certificates. The order enjoined defendants from employing and paying any uncertified person for serving in the position of acting principal or for performing the services of acting principal, although given a different title.

The court went on to hold that assistant principals, those persons taking charge of a school for periods when the principal is absent for not more than 10 school days, need not hold supervisory certificates. Thus, the injunction order contemplated that defendants could continue to employ uncertified individuals as assistant principals.

Our review of the record reveals that the attention of the trial court in the injunction proceedings was directed to these two specifically defined and narrowly drawn categories. Not once in the pleadings, transcript of

proceedings or final order is there reference to branch schools or interim principals or an indication that the court considered possible violations of the School Code resulting from defendants' policy of appointing one certified individual as principal of more than one school.

To reach the conclusion now urged by plaintiffs, the trial court had to conclude that an uncertified assistant principal or head teacher serving under a certified principal who had been appointed to supervise more than one school, was performing supervisory duties which exceeded the limits set by the injunction order. It is our opinion that in determining that the designation of one certified individual as principal of more than one school placed uncertified individuals in positions of "performing the services of an acting principal," the trial court in the contempt proceedings erroneously expanded the scope of the injunctive relief previously granted by the trial court. In this regard we find the language of our supreme court in *O'Leary v. Allphin* (1976), 64 Ill. 2d 500, 513-14, 356 N.E.2d 551, 557-58, instructive:

> "A pertinent factor which must be considered is the specificity of the injunction order. Section 3—1 of the Injunction Act (Ill. Rev. Stat. 1973, ch. 69, par. 3—1) provides in pertinent part: 'Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; * * *.' The foregoing language was taken from Rule 65(d) of the Federal Rules of Civil Procedure (Fed. R. Civ. Pro. 65(d)). The purpose of the rule was succinctly stated by the Supreme Court in *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Association* (1967), 389 U.S. 64, 76, 19 L. Ed. 2d 236, 245, 88 S. Ct. 201, as follows: 'The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid. * * * The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension.' Subsequently, in *Granny Goose Foods, Inc. v. Teamsters Local 70* (1974), 415 U.S. 423, 444, 39 L. Ed. 2d 435, 453, 94 S. Ct. 1113, the court stated: 'As the fine imposed in this case exemplifies, serious penalties can befall those who are found to be in contempt of court injunctions. Accordingly, one basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the

injunction actually prohibits.' Courts of this State have likewise held that an injunction order cannot support a finding of contempt unless it sets forth with certainty, clarity and conciseness precisely what actions are enjoined."

■ To give the injunction order the specificity required by the *O'Leary* case and to prevent it from being unenforceably vague, we must narrowly construe the language contained therein. That portion of the decree enjoining defendants from employing any person "for serving in the position of Acting Principal; or for performing the services of an Acting Principal, although given a different title" must be read to prohibit only the employment of an uncertified person to serve "as the supervisory head of a school where a vacancy exists in the position of Principal or where the Principal is absent from the school for a period of time due to extended illness, leave of absence or like cause (meaning any period in excess of ten (10) school days.)" We cannot say that defendants' policy of appointing one individual to serve as the principal of more than one school falls within this prohibited activity. Nor can we conclude that assistant principals and head teachers participating in defendants' branch school program or serving under interim principals perform the services of an acting principal within the meaning of the injunction order. Therefore, the testimony presented during the contempt proceedings to support plaintiffs' contention is not evidence which will support a finding of contempt.

## II.

We agree with plaintiffs that defendants should not be permitted to engage in semantic gymnastics as a ruse to avoid compliance with the injunction order. (See *United States v. Greyhound Corp.* (N.D. Ill. 1974), 370 F. Supp. 881, *aff'd* (7th Cir. 1974), 508 F.2d 529; *Pfeiffenberger v. Illinois Terminal R.R. Co.* (1946), 329 Ill. App. 476, 69 N.E.2d 355.) However, the record indicates that the policy of creating branch schools under the jurisdiction of a single principal is a longstanding one. Although this policy was in existence at the time the original complaint was filed and plaintiffs were fully aware of its operation, no objection was raised with regard to this policy during the injunction proceedings. The history of the defendants' branch school policy indicates it is not a course of conduct entered into for the purpose of avoiding the effect of the injunction order.

## III.

Finally, we think it necessary to emphasize that in reaching the conclusion that acts for which defendants have been held in contempt were not prohibited by the underlying injunction order, we express no

16

opinion as to whether the defendants' policy of appointing one person as principal of more than one school or branch school is in violation of the applicable sections of the School Code. Our holding is limited to the narrow question of whether the evidence establishes that defendants were guilty of contempt.

The record contains no other convincing evidence of defendants' alleged noncompliance with the injunction order which would sustain a finding of contempt. Accordingly, the judgment of the trial court finding defendants guilty of contempt and imposing fines is reversed.

Reversed.

*ROMITI, J., concurs.

---

* Justice Dieringer, who concurred in the original opinion of the court, has since retired and did not participate in this modified opinion.