THE PEOPLE *ex rel.* THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant, *v.* PAUL FANSLER, Defendant-Appellee and Third-Party Plaintiff.— (FLOYD FUNK, Third-Party Defendant.)

Fourth District    No. 17044

Opinion filed January 8, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Edward M. Kay, Assistant Attorney General, of counsel), for appellant.

McDonald, Strickland & Clough, of Carrollton (Hugh A. Strickland, of counsel), for appellee.

JUSTICE LONDRIGAN delivered the opinion of the court:

The Department of Transportation obtained an injunction ordering Fansler to remove portions of a levee that is on his farmland. In one section the levee forms an angle: one line extends northwest from the vertex and the other line goes west. Intending to order the removal of the northwest line, the trial judge instead entered an order mistakenly directing Fansler to remove the northeast line, which did not exist. Fansler leveled the west or lower line. Not wanting the landowner to bear the cost of his mistake, the court later ruled that Fansler had substantially complied with the terms of the injunction. The Department appeals this determination, and we reverse.

The Department argues that compliance with an injunction must be measured against the intent or purpose of the court's order and that Fansler acted at his peril in removing the west line. Fansler responds that the Department should have noticed the court's mistake when the order was entered and that the Department is now equitably estopped from complaining.

■■ Following the literal terms of an injunction is not always enough; failure to comply may be found when one violates the purpose of an order though not its express terms. (*West Disinfecting Co. v. Koppelman* (1920), 216 Ill. App. 438.) In *John B. Stetson Co. v. Stephen L. Stetson Co.* (2d Cir. 1942), 128 F.2d 981, 983, the court said:

> "In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to find a breech of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded. [Citations.]"

The purpose of the injunction in this case is clear on review and was clear to the parties and the court below. From the beginning of this dispute the Department has maintained that the levee causes flood waters from a nearby creek to flow onto neighboring farmland. In August 1976 the Department received a letter complaining about an embankment on land owned by Floyd Funk, Fansler's predecessor in title, and told Funk to seek a permit (Ill. Rev. Stat. 1975, ch. 19, par. 70). The next month Funk applied for an "after the fact" permit for his levee. The Department informed Funk in February 1977 that it would not issue a permit unless he moved the levee back or breached it in several designated places. In March 1977 the Department told Fansler what it had told Funk the previous month; the Department had learned that Fansler was negotiating the purchase of this land from Funk.

Fansler bought the land May 5, 1977; he did not respond to the Department's requests in June and August of that year that he submit a list of proposed changes that would bring the levee into compliance.

In an order entered November 1, 1979, the trial judge directed Fansler to breach the levee in accordance with the Department's plans, which sought the removal of the angle in question here as well as the landowner's choice of one of two other sections. This order required the removal of both lines forming the angle.

The Department petitioned for a rule to show cause January 22, 1980, charging that Fansler had not made the necessary breaks in the embankments. Three hearings followed; the court wanted more information about the need for the breaks that had been ordered in November. David R. Boyce, the Department's chief flood-plain management engineer, attended the second of these hearings to answer the court's questions; the court admitted testimony and affidavits at the third hearing, and Boyce testified then. We note that although the Department objected to the introduction of testimony and to the court's intention to redetermine what had already been decided, this point is not raised on appeal; also, the Department submitted two affidavits of its own.

The information presented to the court showed that an embankment

perpendicular to the flow of water is a greater impediment than one running parallel. The floodwaters here flow to the southwest. The northwest line from the apex of the angle involved here is nearly perpendicular to the creek's flow; the west line, however, is more parallel—as we see from the exhibits, the west line is at roughly a 45-degree angle to the southwesterly flow.

In his appearances before the court Boyce explained that because the waters flow southwesterly, section A, which is the angle involved here, was an impediment to the flow and had to be removed. Boyce testified that section A is 1,400 feet long but that the portion of that section perpendicular to the flood flow is only 400 feet long. Asked about the effect of a levee near Fansler's, Boyce explained that because it was parallel to the southwesterly flow of floodwaters it was not a significant obstruction. An affidavit submitted by Boyce iterated that embankments perpendicular to the flow of water are greater impediments than parallel ones.

In a docket entry made May 2, 1980, the trial court "modified, supplemented, and clarified" its earlier decree, ordering "that an opening be made at location A, commencing at the apex of the levee at that point nearest the creek, then proceeding for a distance of 250 feet in a north easterly direction." The court also ordered the defendant to remove another portion of the levee. The defendant was to make these changes as soon as the weather permitted.

After seven months of delay and two more hearings—during this time neither party called the court's mistake to the court's attention—the Department filed a motion December 29, 1980, to determine compliance with an order dated August 15, 1980; the August 15 order had directed Fansler to breach the embankment "in substantial compliance" with the order of May 2, 1980, on or by October 15, 1980.

The last hearing in the case was held January 16, 1981. The trial judge acknowledged his mistake in directing the removal of the nonexistent northeast line and said that he had intended the northwest line. Although Fansler had breached the west line, the court found him in substantial compliance with the May 2 order, saying that the defendant should not have to bear the cost of the court's mistake.

■■ ■ We conclude that Fansler was not in substantial compliance. In *Pfeiffenberger v. Illinois Terminal R.R. Co.* (1946), 329 Ill. App. 476, 481, 69 N.E.2d 355, 357, the court said:

> "In determining whether there has been a breach or violation of an injunction, the decree or order for the injunction is to be construed with reference to the nature of the proceeding and the purpose of the injunction as shown by the pleadings and the relief prayed for."

A review of the evidence and proceedings in this case shows why the trial court wanted the northwest rather than the west line of portion A removed; Fansler's removal of the west line not only failed to conform to the literal and impossible terms of the order but also violated its spirit. When Fansler breached the levee he interpreted the court's order at his own peril. In *State ex rel. Jarboe v. Holt* (Mo. 1969), 444 S.W.2d 857, 859, the court said:

> "[W]hen a party is in doubt about what the Court intends his duties to be under an injunction order, and proceeds under his own construction, he does so at his peril."

■■ The court ordered Fansler and not the Department to breach the levee; if Fansler doubted the court's instructions he should have sought clarification. Fansler argues that the Department is estopped from questioning his compliance with the order, however, because it did not notice the court's mistake. Although public bodies are not immune from estoppel, the doctrine is applied much less readily against them than against private persons. (*Kovacevic v. City of Chicago* (1977), 47 Ill. App. 3d 674, 365 N.E.2d 104.) The general rule is that a public body will not be estopped unless it has induced the opponent's acts by its own positive acts. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415.) *Kovacevic* found estoppel through inaction, however; there the city failed to record its 19-year-old interest in a piece of property and was held to be estopped from denying a building permit to the bona fide purchaser without notice. The city's interest in the property was a commitment from a neighboring landowner that the parcel would be used for a parking lot. The court cited a State statute protecting bona fide purchasers and a city ordinance implicitly requiring that commitments for parking lots be recorded or registered.

■■ In this case the Department did not mislead Fansler; also, the Department had no greater opportunity than Fansler to seek clarification of the court's order. The Department's silence, although passive negligence, did not contravene any law; the Department is not equitably estopped from questioning Fansler's compliance with the injunction.

We therefore remand the cause so that the trial court may enter an order directing Fansler to remove the northwest line of portion A, beginning at the vertex of the angle and proceeding northwest 250 feet. This represents the order that the court intended to enter May 2, 1980.

Reversed and remanded.

GREEN, P. J., and WEBBER, J., concur.